On Motion to Dismiss Appeal.
NICHOLLS, J.
The present suit is one by the plaintiff for the recovéry of damages in the sum of $5,127.35, with legal interest from judicial demand, which plaintiff alleged she suffered by reason of a breach of contract on the part of the defendant.
The district court rendered a judgment in favor of the plaintiff against the defendant, which was signed on June 26, 1908, for the sum of $3,250, with legal interest from judicial demand.
On the 1st of July, 1908, the defendant applied for, and on the same day was granted, an order for a suspensive appeal from said judgment.
On the same day she executed and filed in the district court an appeal bond for the sum of $5,200. On July 10th, on application of the' plaintiff, it was ordered by the court that defendant show cause why her appeal should not be dismissed, and why execution should not issue on the final judgment rendered, on the ground, alleged by the plaintiff, that she had not complied with article 575 of the Code of Practice, and had not given a bond or ob *297 ligation, of a sum exceeding by one-balf tbe ■amount of the judgment appealed from. Aft■er a trial of this rule on July 27th, the court made the same absolute, dismissed defendant’s appeal, and ordered and decreed that ■execution issue on the judgment, declaring that it was of opinion that the appeal bond ■was not sufficient in amount.
On July 28th the defendant, alleging that «he was aggrieved by the judgment rendered by the court making absolute the rule of the plaintiff filed July 10, 1908, to show cause why the suspensive appeal of defendant •should not be dismissed and why execution ■should not issue on the judgment signed on the 26th of June, 1908, prayed the court for ja. suspensive and devolutive appeal from the judgment in said rule.
On the same day the court granted the defendant a suspensive and devolutive appeal ■from the judgment signed on the 27th of July, 1908, making absolute the rule of plaintiff to ■show cause why the suspensive appeal of defendant should not be dismissed, and why ex•ecution should not issue on the judgment «igned on June 26, 1908, on her giving bond in the sum of $5,750.
The bond was ordered executed and filed. In the meantime, on July 23, 1908, defendant ■filed a petition in which she alleged that she was aggrieved by the judgment, which had been signed on June 26th, condemning her to pay plaintiff $3,250, with legal interest from judicial demand; that she desired to take a ■devolutive appeal from the same, and was entitled to such an appeal in addition to the .suspensive appeal which had been before granted. She applied for and was granted an order for a devolutive appeal on furnishing bond in the sum of $200.
This bond was furnished.
On September 12, 1908, a transcript of the record and evidence in the suit of Mrs. Margaret Reynolds v. Miss M. L. Egan, together with the proceedings taken therein in respect to the appeals above referred to, were filed in this court. Mrs. Margaret Reynolds, plaintiff and appellee, moved to dismiss the three several appeals embodied in this transcript, viz.:
First. The appeal taken and filed July 1, 1908, because defendant did not comply with the condition upon which said appeal was allowed, and did not file with the clerk, written 10 days ago, exclusive of Sundays, from the date of the signature of the judgment appealed from July 26, 1908, her obligation, with sufficient surety, in a sum exceeding by one-half the aggregate amount of the judgment, including principal and interest to date of the judgment.
Second. The devolutive appeal taken July 23, 1908, because, having, already on July 1, 1908, taken a suspensive appeal, and not having withdrawn or abandoned her appeal taken on July 1st, but still insisting on that, she cannot legally take another appeal from the same judgment until the first is disposed of, no more than she could bring two suits against the same party on the same cause of action and prosecute both at the same time.
Third. The appeal taken on July 28, 1908, from the judgment or order dismissing the first appeal and directing execution to issue, because no appeal lies from such an order. The remedy of the defendant (if error had been committed) was by prohibition, and one who has a judgment not suspensively appealed from and entitled to execution can be tied up by an appeal from an order directing execution to issue; second, because the bond is a bond of appeal from a judgment said to have been rendered and signed on July 28, 1908, when no judgment was rendered and signed on that day. The judgment ordering execution was rendered and signed on July 27, 1908, and no appeal bond has been filed for prosecution of an appeal from that judgment.
On July 31, 1908, Mrs. Margaret Reynolds, *299 plaintiff in the suit of Mrs. Margaret Reynolds v. Miss M. L. Egan, filed a petition in which, after reciting the existence of the said suit and the judgment rendered therein in her favor, the application of the defendant therein for a suspensive appeal, the granting of said application on applicant furnishing a bond for a suspensive appeal, conditioned according to law, averred that she had furnished a bond, sufficient in amount to sustain a suspensive appeal and the delays for the perfecting of such an appeal; that thereupon she obtained from the court a rule on the defendant to show cause why the suspensive appeal should not be dismissed and execution should not issue upon the said judgment; that this rule was tried contradictorily with Miss Egan; that after hearing the rule was made absolute, the suspensive appeal was dismissed, and the execution of the judgment was decreed by the court; that thereupon Miss Egan, defendant in the rule, applied to the court for, and has obtained from it, an order for a suspensive and devolutive appeal from the judgment on said rule, on her furnishing an appeal bond for the sum of $5,750, which bond was furnished; that said action of the district judge was illegally contrary to the rights of petitioner, and should be reversed by the Supreme Court in the exercise of its supervisory powers. She prayed that a mandamus issue from the Supreme Court, commanding the district judge to vacate his order granting a suspensive appeal from his judgment on the rule and ordering execution to issue on the original judgment. This court, after due proceedings taken on this application, granted the mandamus prayed for, vacated the order for the suspensive appeal complained of, and directed the district judge to order a writ of fieri facias to issue on execution of the original judgment. Application for a rehearing upon this action of the court was refused. The motion to dismiss is submitted to the Supreme Court under these conditions.
Opinion.
The question as to whether the defendant (Miss Egan) legally perfected a suspensiveappeal from the judgment rendered against her in favor of the plaintiff (Mrs. Reynolds)through the appeal bond which she executed, and the question whether she was properly granted by the district judge a suspensive appeal from the judgment of this court, holding that, having failed to execute a bond for the amount required by law to sustain a suspensive appeal, the order for such an appeal which he had granted in her favor had lapsed, and directing that a writ of fieri faciasissue in execution of the judgment against her, are not before the court, under the transcript which appellant has filed, for the rea-sons that they have been finally disposed of by the judgment of this court rendered in the matter of the mandamus obtained by Mrs. Reynolds, which has been referred to.
We do not understand appellant to expect that’Üie issues determined by that judgment should be reopened and passed upon de novo. The only appeal before the court, as matters stand, and to which the motion to dismiss applies, is the devolutive appeal taken by the-defendant on July 23, 1908, from the original judgment which had been rendered against her in favor of the plaintiff, and which judgment was signed on the 26th of June» 1908. The grounds assigned for dismissing that appeal are not tenable. At the time application was made by defendant for that appeal, and the order for a devolutive appeal was granted, defendant had lost her right to a suspensive appeal, under the order which had been granted her conditionally (that is, conditioned on her furnishing the bond required by law for such an appeal).
There was at that time no legal obstacle standing in the way of her asking for, and of' the court granting her, a devolutive appeal. Her right to a suspensive appeal had then lapsed, and the way was open to a prayer for a devolutive appeal.
*301 It could be more logically urged that tbe consequence of her applying when she did, and of the court’s granting of the same, was the recognition and admission by both herself and the court that the right to the suspensive appeal which she had obtained had then lapsed (which was in fact and law the ease, as this court has decided), than that her then legally existing right to a devolutive appeal should be in any way impaired.
There were not, then, two appeals taken from the same judgment. The only two orders of appeal taken from the original judgment' were that granted on the 1st of July for a suspensive appeal, which lapsed, and, after the lapsing of the same, the order for the devolutive appeal. There is no legal ground for dismissing the latter, and the application to dismiss is denied.
That appeal is maintained.
Statement of the Case on the Merits.
The plaintiff, in her petition filed November 28, 1906, alleged that Miss M. L. Egan, represented by her agent, John Davidson, owes petitioner $5,127.35 because the said Miss M. L. Egan is the owner of the house No. 936 Canal street, between Baronne and Dryades streets, and on September 17, 1902, she, through her said agent, John Davidson, leased the said premises to petitioner from the 1st of October, 1902, to the 30th of September, 1903.
And again the said lease was renewed by^ writing on the face thereof, dated August 10, 1903, for another year, and from year to year; and again was renewed on the 7th of August, 1906. Another lease was made for the same premises to petitioner from the 1st of October, 1906, to the 30th of September, 1907, at the rate of $900 per annum, payable monthly at the rate of $75 per month.
That petitioner had promptly paid her rent and owes no rent; and she annexes hereto the last rent note, No. 12, of the last year, and for the month of October, 1906, due the 1st of November, 1906, and the said lease and rent notes are hereto annexed and made a part of this petition.
That the said premises were leased to petitioner for the purpose of renting rooms and keeping furnished rooms therein, which fact was well known to the said John Davidson, agent for the said Miss M. L. Egan, and in order to make the said premises tenantable and fit for the purpose for which they were leased, and with the authority of the said John Davidson, agent, petitioner put in electric wiring for lighting, paid for partitions, and paid for other carpenter’s repairs, and plumbing and papering, costing, her $411.35, as appears by the detailed bill of particulars and memorandum hereto annexed and made a part of this petition.
That petitioner by careful and diligent attention to her business had built up a large and lucrative business, whereby she was making $6,000 a year, or $500 a month, and that her expenses in the said business amounted to $1,2S4, leaving her a net profit of $4,716, to which should be added money she expended for partitions, painting and papering, and permanent improvements, which are wholly lost to her by reason of the facts hereinafter stated.
That the said Miss M. L. Egan, through her said agent, guaranteed petitioner against all the vices and defects of the thing which might prevent its being used, and even if said defects and vices had arisen since the lease was made, provided that they did not arise from the fault of the lessee. And the said Miss M. L. Egan is bound to indemnify petitioner from the loss that has resulted from the vices and defects hereinafter named, which have arisen from no fault of petitioner.
That, inasmuch as the said John Davidson, agent of the said Miss M. L. Egan, did not comply with the city ordinance and furnish *303 petitioner with an adequate supply of pure and wholesome water, petitioner had been obliged to make arrangements to get hot and cold water from the Hotel Grünewald and to make pipe connections with the said hotel to convey the water into the premises No. 93G Canal street, in order that her roomers may have the use of the bath and water for their rooms and the use of the water-closet. That shortly after the said lease was made, on the 7th of August, 190G, the walls of all the rear of the house began to crack and open as the result of the extensive excavations made on the property of the state of Louisiana and leased to the Grünewald Hotel Company, fronting on Dryades street, and adjoining the property No. 936 Canal street in the rear, which cracking and parting of the walls could have been avoided and could have been prevented if the said Miss M. L. Egan and the said John Davidson, her agent, had given the said walls proper and sufficient support.
That your petitioner promptly notified the said John Davidson of the cracking of the walls, and when he came to the premises he was a timid man, and very cautious, and said it was dangerous, and would not even go to look at them.
That petitioner had repeatedly called his attention to the dangerous condition of the said walls and demanded that he put them in order, and he had utterly failed to make any attempt even in that direction; and the cracks had continued to widen until in one of the main walls there was a crack five or six inches wide, reaching from the top to the ground, and the rear end of the building towards Common street was likely at any time to slide into the excavations made by the Grünewald Hotel Company, and as a consequence her entire water supply had been cut off, so that she had no water on the premises to furnish her rooms for baths, toilets, or drinking, and no water for the water-closet, but had been obligated to introduce an earth barrel into the main house and carry water in buckets from the neighbors.
And the dangerous condition of the promises had frightened away all her customers, and it was impossible for her to get or keep roomers, unless she could afford them the accommodations of a decent water-closet, a bath of hot and cold water, and water for ordinary toilet purposes, and the result had been from the breach of the said contract of lease guaranteeing petitioner against vices and defects of the thing which prevented its being used for the purposes for which it is leased; that she had been damaged and lost the sum of $5,127.35 above named; that it will cost many thousands of dollars to reinstate the building No. 936 Canal street, and make it fit for the purposes for which it was leased. The rear portion would have to be torn down and rebuilt, and at this season of the year, which was the most profitable season for her line of business, she had been entirely deprived of the use and benefit of the premises, and had so been damaged as above set forth.
That she was unable in the neighborhood to find a similar house to carry on her business, and would be obliged to give it up and thereby lose the profits which she would have made and were in contemplation of the lessor and her agent when the lease was made.
In view of the premises, petitioner prayed that Miss M. L. Egan, through her agent, John Davidson, he cited, and that the said lease be cauceled, and that it be decreed that she was under no obligation to pay any more rent, and that she recover from the said Miss, M. L. Egan the sum of $5,127.35, with 5 per cent, interest from judicial demand, and for costs, and for general relief.
Defendant excepted that plaintiff’s petition set forth no cause of action. This exception was overruled. She then, under reservation of said exception, answered. She *305 first pleaded a general denial. Further answering, she alleged that if plaintiff suffered any loss, as was by said plaintiff alleged, that same had been caused by the wrongful and tortious acts of the Hotel Grünewald Company, Limited, and their contractor, Charles Sieard, in making the excavations and in doing the other work included in the extension, now being constructed in the rear of defendant’s building No. 936 Canal street, of Hotel Grünewald. And defendant charged, in planning and carrying on said work said Grünewald Company, Limited, and their said contractor, Charles Sieard, joining together for the purpose, had made the excavations in question on a scale of magnitude, thereby causing the walls of defend-the building itself to be condemned as unsafe, hitherto unheard of in this locality, ant’s said building to crack and sink, and They had shaken the circumjacent territory by pile driving for foundations, and so disturbed and impaired said building as to compel defendant to reconstruct it. They had exploded dynamite to remove piles wrongfully and negligently put in out of line by themselves, and thereby aggravated and added to the previous damages done by them, and had persisted in carrying on their work and other attendant operations in a reckless and tortious manner, in the face, of continued warnings and protest on the part of defendant and to the injury of her said property. That said hotel company and said contractors had .combined and confederated for the purposes of said work, and for the injury of defendant, and to damage, impair, and destroy her said property as hereinbefore related, were joint tort-feasors, and as such that they were liable in solido to plaintiff and likewise to defendant; that the full extent of said loss and damage was difficult to prove and defendant was entitled to prove it, and to recover for it in due course.
In view of the premises, defendant prayed that said Hotel Grünewald Company, Limited, by its president, Louis Grünewald, and its said contractor, Charles Sieard, be cited herein to defend this suit, and that defendant be dismissed, with judgment in her favor and costs; but if the court should find, as between plaintiff and defendant herein, plaintiff had suffered loss or damage, and render judgment accordingly, that such judgment as might be so rendered over again in favor of defendant, and in solido against said Grünewald Hotel Company, Limited, and said Charles Sieard, and that the right of this defendant to proceed against said company and said Sieard for further damages be expressly reserved. Defendant subsequently discontinued the call in warranty without prejudice.
The district court rendered judgment in favor of the plaintiff against the defendant for the sum of $3,250, with legal interest from judicial demand, and for costs.
Defendant has appealed.
The reasons assigned for judgment were as follows:
“The facts of this case are entirely different from those of any of the cases decided by our Supreme Court, under Rev. Civ. Code, arts. 2697, 2699, 2700, or either of them.
“It is beyond all question that defendant’s house, occupied by plaintiff as lessee, was wrecked by the excavation, pile driving, and other disturbances of the soil, by the Hotel Grünewald Company and its contractors, on their adjacent property.
“It was in the power of the defendant, if proper action had been taken, to have stayed said damaging works, at least until all proper safeguards against injury and for proper indemnity had been obtained. Rev. Civ. Code, arts. 857, 864, 865, 867.
“This as a matter of legal right.
“It was in the defendant’s power, if it was not deemed proper to stay nor stop said damaging new works on the adjoining property, to have ‘shored up’ or reinforced or supported the threatened walls of her own building. The evidence establishes that this could have been done, and that it would have prevented the sinking and wrecking of defendant’s building. The Grünewald contractors did ‘shore up’ the walls; but their work was poorly done and proved wholly unavailing. The result of this neglect by *307 defendant was that the rear part of the building was destroyed and had to be rebuilt, and this result was immediate.
“The result, furthermore, was that defendant’s entire building, in front and in all its stories, was cracked and damaged, so as to render it unsafe for habitation and to destroy it for all the purposes of a lodging house, and this result was not long delayed. The proofs brought into the case at the trial abundantly establish the foregoing findings of fact.
“For all the objects and purposes of the lease, to wit, the renting of furnished rooms by defendant, which were well known to both parties and in their contemplation when the lease was executed, in renewal of similar leases for past years, the damage to the leased building amounted to total destruction.
“In the suit brought by defendant against the Hotel Grünewald Company ot al., No. - of the docket, division B, still pending, the defendant, as plaintiff there, in her original and supplemental petitions, alleged that the damage originally and still continuing to her building was the equivalent of its entire destruction. These pleadings in said suit in division B are in evidence!.
“At the inception, when evidences of disturbance from the Grünewald works began to manifest themselves to the plaintiff, in possession of defendant’s house, as lessee, she promptly notified Ihe defendant’s agent, who took no efficient measures for her protection. This neglect was a breach of defendant’s contract as lessor. Soon after, when forced to vacate and remove all her belongings from the rear of the building, and the front of said building had began to crack, and all of her tenants had left, fearing to remain in said broken and dangerous building, which the city engineers had condemned, the plaintiff packed her furniture and prepared to quit the premises, and thereupon the defendant’s agent forbade her doing so, and threatened a provisional seizure of her furniture if she attempted to move. The result wds that plaintiff, whose business was that of keeping a lodging house and renting furnished rooms, which she had been carrying on at a fair profit in that building for several years_, was compelled to stay in it, with all her furniture and effects, and to pay the rent, which she did, as it matured, under protest, with her customers or room tenants all gone, because of the dangerous condition of the building, without deriving any benefit. whatever from it.
“She was compelled to move her furniture from the rear, a necessary part, of the building, containing the lavatories, closets, etc. She was compelled to supply temporary closets, etc., and to get a supply of water elsewhere, and to pack up and store her furniture, all involving trouble a.nd expense and worry, and for the year’s rent, which she paid under protest, she received no consideration. Her enjoyment of the premises and her exercise of her business in it, for the rental .year, subject to the incon-’ veniences and losses in the event of disturbance of the building for repairs or from the acts of the neighbor within the limits prescribed by our Code (Rev. Oiv. Code,- arts. 2697, 2699, 2700), were her legal rights as lessee. Her right was to be maintained in the use and enjoyment of the property by the lessor. Her rights were, if the building became uninhabitable or unfit for its intended use, to leave it and end the lease.
“Of all these rights the defendant lessor deprived her, for she failed to prevent the injury to the building when this was easily within her power, and she forced plaintiff to remain in the house and to pay rent at the contract rate until the term expired.
“Under these conditions, forced upon plaintiff' by the negligence of defendant in the outset, and by the conduct of defendant in compelling her to remain in the house by threats of seizure, nothing remained of the contract of lease, except its form.
“The house had become uninhabitable and incapable of use as a lodging house, which, in law, dissolved the lease; but the plaintiff still continued to occupy it, with her furniture all packed and stored and useless to her, because defendant’s agent compelled her, by threats of provisional seizure, to remain. The plaintiff still continued month by month to pay the rent, which defendant’s agent' exacted, at the contract rate; but she did so under protest. With the house destroyed for all the purposes of the lease, _ with all consent withdrawn, with the plaintiff remaining unwillingly in the premises, through the coercion of defendant’s agent, and paying rent under protest, when all consideration for such rent had failed, it seems to me that all the substance and reality of tbe contract of lease had gone, and that nothing remained of it; and this condition of affairs was brought about primarily by the negligence and fault of the defendant, and by the subsequent wrongful conduct of her agent in compelling the plaintiff to personally remain in the house, after its broken condition had destroyed the business for which she had rented it, and in compelling her to pay the rent against her will and under protest, when all consideration for it had failed. It seems to me that this conduct of the lessor was a gross breach of her duty to the plaintiff under the'contract, which brings the damage assessment under Rev. Civ. Code, art. 1934, §§ 1,2.
“This is not a case for the application of article 2700, for it is not a matter of repairs to the building; nor can article 2699 be applied, because the defendant, lessor here, was in grave fault, and that article provides for a case where the lessor is ‘without any fault.’ Neither can article 2697, nor the last paragraph of article 2700, be invoked as the rule, because the defendant’s agent by threats of seizure coerced the plaintiff to remain in the house and keep her furniture and effects, with which she earned her livelihood and carried on her business, in the house, and exacted the rent against her protest and her will, all of which the defendant had no legal right to do under these articles, which flowed from defendant’s neglect of duty as lessor at the beginning of the trouble.
*309 “Defendant’s duty as lessor, under Rev. Civ. Code, art. 2692, § 2, was ‘to maintain the house in a condition such as to serve for the use for which it was hired,’ and this she could have done by invoking Rev. Civ. Code, arts. 857, 864, 865, 867, against'the Grünewald Company and their contractor, and by seeing that the rented house, occupied by plaintiff, was properly braced and supported, as the proof abundantly shows ; and this duty she did not fulfill, to plaintiff’s wrong and injury. The adjudicated cases relied upon by defendant’s counsel in his exceedingly able argument, viz., Redon v. Coffin, 11 La. Ann. 695, and Bonnecaze v. Beer, reported in 37 La. Ann. 531, cannot apply, because the facts of those cases were totally different from those of the instant case.
“Without further discussion, I think that Rev. Civ. Code, arts. 2668, 2729, 1930, and 1933, § 3, find application, and justify the plaintiff’s demand, as also do Rev. Civ. Code, arts. 21, 1964, 1965; and, considering the rent paid by defendant, without consideration received therefor, the aetuaj expense and trouble, and loss of time, and disturbance in her business, 1 think that the proof justifies the award of damages that I have made in her favor.
“The defendant, as plaintiff in the suit against the Grünewald Company, now pending in division B, can obtain reparation for all her loss and damage. If ¿he (defendant) is not held in the suit, then are plaintiff’s wrongs and injuries without remedy.”
Opinion.
The relations of landlord and tenant began .between plaintiff and defendant as far back as 1902. The first lease between them was made on September 17, 1902, to'commence on the 1st of October, 1902, and end on the 30th of September, 1903. This lease was renewed on August 10, 1903, for another year and from year to year. It was again renewed on the 7th of August, 1906, to commence on October 1,1906, to end on the 30th of September, 1907, at the rate of $900 payable monthly at the rate of $75 per month.
The plaintiff went into possession of the leased premises from the commencement of the first lease. There is no claim or pretense by plaintiff that prior to the 17th of September, 1906, the landlord had not complied with all the obligations which the lenses imposed upon her from the nature of the contract under article 2G92 of the Civil Code. There is no recital in the leases as to the special purpose and use for which the premises were leased; but it is conceded that plaintiff’s business'or occupation was that of keeping furnished rooms, and that the premises were leased for the purposes of that business, and that those facts were known to-both parties. Plaintiff alleges that after the-making of the lease on the 6th of August, 1906, which was to commence on the 1st of October, 1906, and to end on the 30th of September, 1907, the walls of all of the rear of the house leased began to crack and open as the result of extensive excavations which were made on the property adjacent to it, leased to the Grünewald Hotel Company; that these cracks and openings made the building unfit for the use for which it was leased, and said injuries to the building were continuous in character; that it would cost thousands of dollars to reinstate the building and make it fit for the purpose for which it was leased; that the rear portion would have to be torn down and rebuilt; that she was unable in the neighborhood to find a similar house to carry on her business,.and would be obliged to give it up and lose the profits which she would have made, and in contemplation of the parties. The prayer of the petition was that the defendant be cited, that.the lease be annulled, that it be decreed that she was under no obligation to pay any more rent, and that she recover from her lessor $5,127.35, with legal interest from judicial demand. From what has been stated, it will be seen that we have not to deal with a case where from defects inherent in the building itself it had become unfit to carry on the business for which it was leased, nor is it one where its unfitness for the business had been occasioned by any affirmative act of the defendant herself, but that this condition of things arose from the action of third persons by the application of external force in erecting on their own property very heavy buildings (13 or 14 stories high), which required for *311 their construction deep excavations to be made in the earth and pilings 50 or 60 feet long to be driven down therein by steam pile drivers. The driving of the pilings occasioned violent vibrations of the ground, and the great weight of the buildings caused the ■earth on which the leased building stood to slip and settle to the extent stated, with the ■results complained of.
There can be no question that, from the nature of the contract of lease, the lessor is bound, without any clause to that effect:
(1) To deliver the thing leased to the lessee.
(2) To maintain the thing in a condition such as to serve for the use for which it was hired.
(3) To cause the lessee to be in peaceable possession of the thing during the continuance of the lease, for that is the text of the law. Civ. Code, art. 2692. These in general terms are the obligations of the lessor; but different articles of the Code must be read together. As bearing upon the provisions of that article, we should consider the following special articles of the Code on the subject of letting and hiring, coupled with general principles of law as applicable to the particular situation of this case.
“Art. 2097. If, during the lease, the thing be totally destroyed by an unforeseen event, or if it be taken for a purpose of public utility, the lease is at an end. If it be only destroyed in part, the lessee may either demand a diminution of the price, or a revocation of the lease. In neither case has he any claim for damages.”
“Art. 2099. If, without any fault of the lessor, the thing cease to be fit for the purpose for which it was leased, or if the use be much impeded,_ as if a neighbor, by raising his walls, shall intercept the light of a house leased, the lessee may, according to circumstances, obtain the annulment of the lease, but has no claim for indemnity. ■
“Art. 2700. If, during the continuance of the lease, the thing leased should be in want of repairs, and if those repairs cannot be postponed until the expiration of the lease, the tenant must suffer such repairs to be made, whatever be. the inconveniences he undergoes thereby, and though ho be deprived either totally or in part of the use of the thing leased to him during the making of the repairs. But, in case such repairs should continue for a longer time than one month, the price of the rent shall be lessened in proportion to the time during- which the repairs have continued, and to the parts of the tenement of the use of which the lessee has thereby been deprived. And the whole of the rent shall be remitted, if the repairs have been of such nature as to oblige the tenant to leave the house or room and to take another house, while that which he had leased was repairing.”
“Art. 2703. The lessor is not bound to guarantee the lessee against disturbances caused by persons not claiming any right to the premises; but in that case the lessee has a right of action for damages against the person occasioning such disturbance.”
The French.text of that article was as follows :
“Le bailleur n’est pas tenu de garantir le preneur du trouble que des tiers apportent par voie do fait h sa jouissanee, sans prétendre d’ailleurs aueun droit sur la chose louée; sanf au preneur a les poursuivre en son nom, ct a demander, s’il y écnet des dommages — intérets de ces voies de fait.”
It was shown on the trial that as a matter of fact that plaintiff continued to occupy herself, up to the end of the lease of 1906 and 1907, some parts of the front building, and that she kept all of her furniture packed therein, ready to abandon the premises.
It will be seen that, while article 2692 of tbe Civil Code enumerates tbe rights to which a lessee is entitled, it does not declare therein what effect would follow, should she not, in fact, have obtained them in particular cases. It is left to other articles of the Code to declare what relief should be given and what remedy accorded to a lessee under different circumstances. In view of the fact that peaceable possession of the thing leased is the very object of a contract of lease, it was reasonable and proper to expect that the price the lessee should pay for such possession should be reduced or entirely remitted as that possession should partially or entirely fail; for under these circumstances the contract would have been partially or entirely without cause. It would not follow, however, because the consideration had partially or entirely failed, that the lessee should recover damages from *313 his lessor. The basis for a claim of damages is a fault, and it might well be that in some given case the lessor would be unable to comply with his obligations and yet be free from fault. The law, therefore, deals equitably with both parties under special circumstances. Under some circumstances it limits the relief of the lessee to a reduction of rent; under others, to remission of the same in entirety and a cancellation of the contract of lease; under others, absolving the lessor from all blame, it requires the lessee to bring his action against third parties troubling or disturbing his rights.
Where the rights of a lessee are disturbed by third parties not claiming any right to the premises, and under circumstances which bring the ease under the provisions of article 2703, the lessor is protected from attack by the lessee under its express terms. What we have to determine, therefore, is whether the disturbance of which the plaintiff complains was one for which she can have relief or recourse against her lessor for the same, as she has done in this instance, or whether she has made a mistake and directed her attack against the wrong person; whether, if she has any recourse against her lessor, the relief and remedy which she seeks is that to which she is entitled by law.
Plaintiff’s action, as brought, is one against her lessor, asking the cancellation of the lease and that she be decreed absolved from the payment of all rent, coupled with a demand against her lessor for damages, not as the direct author of those alleged to have been suffered by her through any personal act of her own, but as arising from an alleged failure on her part to carry out her obligations of warranty, which required her to cause her lessee to be maintained in peaceable possession of the thing leased during the continuance of the lease.
There can be no doubt that under the circumstances of this case her demand for a cancellation of the lease and a remission of the rent in entirety, under the lease, was-well grounded; but with this right on her part was her accompanying duty of vacating’ the premises. She could not have the lease canceled and at the same time remain in the-building, as she did, making no payment whatever to the owner for so doing. Defendant’s agent recognized at once, on being informed of the disturbance of her possession, her wish to abandon the premises. He, in fact, advised her to do so, as the premises were in a dangerous condition. In the testimony given by her on her own behalf, she declared that she had intended to leave, and had prepared to do so, but was compelled to-remain in the building by reason of a threat from the agent that, if she attempted to leave without payment of the rent, he would seize her furniture under a writ of provisional seizure. We think plaintiff must have been under a misapprehension touching that matter. The agent, we think, may have claimed that the lessor was entitled to rent up to the time of the vacating of the premises by the plaintiff, and threatened to enforce payment of that rent by provisional seizure; but we question that he did more-than this. Be that as it may, his threat to have recourse to judicial proceedings was-no ground for her remaining on the premises. She had the legal right to cancel the lease, as matters stood, and vacate the premises,- and she should have done so. We say she-had the right to cancel the lease, for the reason that the situation was not one calling for “repairs” to the building, but for a “reconstruction” of the same. Quoad the-plaintiff’s business of renting rooms, the building had become utterly unfit.
The law does not require the lessor to reconstruct buildings at great expense for the-benefit of the lessee. The expense of reconstruction may exceed the means of the lessor and be out of all proportion to the rent which. *315 he would receive from the lessee. He might not have been willing to rebuild on his own account. He cannot be expected to do so in the interest of the lessee. We will cease further discussion of this subject for the present, and return to a consideration of the article of the Code referred to, and to the effect that the provisions of that article have upon the rights and obligations of the parties.
Article 2703 of the Civil Code is taken from article 1725 of the Code Napoléon. The English translation of the article leaves out a translation of the words “voies de fait.” The French article itself does not define what is meant by those words. They are placed in the article as having a well understood and known meaning.
We understand those words as applying to disturbances which the lessee has the right himself to resist; disturbances against which the lessee can protect himself by having recourse to legal proceedings. An illegal act is a “voie de fait.” A legal act is not.
French commentators say that article 1725 ■of the Code Napoleon does not mean that a “voie de fait” is to be found on every occasion where the disturbances are caused by •persons claiming no right to the premises leased. It, however, excludes, as not being “voies de fait,” acts of disturbances which .are committed in the exercise of a legal right, as, for instance, the building on one’s own premises of a building or wall directly opposite to the windows or openings of the .dwelling or house of the next-door neighbor. The disturbances must come from the commission by third parties of a tort “un acte illegal est ‘une voie de fait’ or les voies de fait ne donnent pas lieu a garantie contre le bailleur. Le preneur a son action contre l’auteur du trouble,” says Laurent. “Des tiers peuvent entraver la jouissance du pre;neur; le bailleur repond-il de ce trouble?” (asks the same author). “11 faut distinguer” (he answers). “Si ce sont des voies de fait, le bailleur. n’est pas garant. * * * Si 1’entrave qu’un tiers apporte & la jouissance du preneur est l’exercise d’un droit, Tar-tide 1725 est inapplicable; on ne peut pas dire que celui qui use de son droit eommette une voie de fait, laquelle est un délit.”
Laurent (volume 25, p. 170, § 160), under the heading of “Trouble de fait,” discusses article 1725 of the Code Napoleon as follows:
“Le bailleur n’est pas tenu de garantir le preneur du trouble que les tiers apportent par voie de fait a sa jouissance, sans prétendre d’ailleurs aucun droit sur la chose louSe; sauf au preneur h les poursuivre en son nom personel (article 1725). Pourquoi le bailleur n’est-il pas tenu des troubles de fait? On pourrait dire que peu importe la cause du trouble; le preneur ne jouit pas quand il est trouble, et le bailleur s’est engage a le faire jouir paisiblement. Telle serait, en effiet, la consequence logique de T obligation que le bailleur contráete de faire jouir paisiblement le preneur de la chose louSe pendant la durée du bail. La loi n’a pas admis cette conséquence, parce qu’elle suppose que les troubles de fait sont dus a une negligence du preneur, qui n’a pas surveillé assez activement la chose louSe; ou ils sont dus & des inimitiés personelles; dans cette supposition, il serait injuste de rendre le bailleur responsable. L’article 1725 indique encore un autre motif: e’est que le preneur a une action personnelle contre les auteurs du trouble. (1) GSnSralement cette action lui suffit. * * * ”
In the present case the authors of the disturbance are known, and it is not claimed that they are insolvent. It will be necessary to examine, therefore, whether in this case the Grünewald Hotel Company was acting within the limits of its legal rights, or whether by reason of the manner of its erecting the buildings on its own property, or in the failure on its part to take proper precautions to guard the interests of third parties, it went outside of the limits of its legal rights and subjected itself to an action ex delicto. There existed no contractual relations between that company and either the plaintiff or the defendant in this case. If by its course it rnadfe itself liable to third parties *317 for the damages caused, its responsibility extended directly to each of the parties to this litigation. While it violated the rights of the owner quoad property rights, it equally violated the rights of possession of the lessee. It therefore subjected itself to actions against it at the hands of the owner and also ■of the lessee.
The plaintiff-in this case seeks to avoid the legal consequences of article 2703 of the Civil Code by charging her with a fault committed in the premises, and in this position she was sustained by the district court. In thus con■cluding, we think both were in error. To say in one and the same article that the lessor is not subject to obligations of warranty arising from the acts of third parties under given ■circumstances, and yet be liable under those obligations for the same acts, is a contradiction in terms. The law having accorded to the lessee herself the means of protecting her own rights, it was her duty to avail herself •of those means, and, failing so to do, she cannot throw the responsibility for the result upon her lessor, who, by the terms of the law, is under that state of facts freed from the •obligation of guarding her interests.
We do not think it can be disputed that where a person, being authorized legally to ■do a certain tiling, does it in a way injurious to third parties and regardless of their rights, to the extent of his departure from the legal requirements which attached to the situation he renders himself liable to persons injured by his acts to actions sounding in damages. In this matter one of two things has happened. The Grünewald Hotel Company either acted in strict accord with its rights, or it has passed outside the limits of its rights and subjected itself to actions of damages for tort. If the latter be the case, plaintiff has no action against the defendant under article 2703.
If the former be the case, while the plaintiff might be entitled to relief of some kind at the hands of her lessor, it would not go to the extent of holding, her liable to an action for damages for all the consequences resulting from her possession being disturbed partially or entirely. She would be limited either to a claim for a reduction of rent or to a demand for the cancellation of the lease, with the rights flowing from such cancellation.
We do not think, under the pleadings, that we can pass upon and adjust the rights and obligations of the parties as resulting from the fact that plaintiff has paid to the defendant under protest the full amount of the rent during the whole period of the lease, while she has herself occupied (for residential purposes, at least) a part of the leased premises. If the plaintiff has paid unduly and in error more money to the defendant than she was legally called upon to pay under the circumstances, and if the defendant has received more than she was* entitled to receive, the law points out the remedy for such a situation, and to that remedy the plaintiff must be relegated.
For the reasons herein assigned, it is hereby ordered, adjudged, and decreed that the judgment appealed from be and the same is hereby annulled, avoided, and reversed, and it is now adjudged and decreed that plaintiff’s demand .that the lease be declared canceled as of date of the judicial demand be recognized, and the lease is so decreed, and that she be decreed absolved from payment of the stipulated rent from that date, but plaintiff’s demand for damages be denied; that defendant pay the costs of the lower court, and the plaintiff pay the costs of appeal, and the right of plaintiff to recover rents paid since judicial demand from her lessor be reserved.