PRICE, Judge.
This is an appeal from the judgment of the district court rejecting the claims of a lessee of rural pasture land for damages occasioned by the partial destruction of a fence by the adjoining landowner.
In May, 1968, the Caddo Parish Police Jury purchased a large tract of land in the southwestern part of Caddo Parish to be used for a corrections institution or penal farm. This tract is adjacent to a 110 acre tract owned by Mrs. Samuel Feist and bounds the Feist property on its southern and western lines.
George B. McKinnon, plaintiff in this action, leased by oral agreement the land belonging to Mrs. Feist on a yearly basis for the pasturage of cattle. The Feist tract was enclosed by an old wire fence on the north, south and western boundaries. No fence existed on the east side of the Feist tract as it was under a common enclosure with the Felix Weiller lands lying adjacent to it on the east side.
In January, 1969, the Caddo Parish Police Jury employees began the construction of a new fence entirely around the perimeter of the newly acquired property. A portion of the old fence situated along the common boundaries with the Feist property was removed in preparation for the erection of the new fence.
At the time of removal of this fencing, there were no cattle being pastured on the Feist land. Upon discovering the removal of the old fencing, plaintiff contacted a member of the Caddo Parish Police Jury and informed him of his oral lease on the Feist property and of his intent to place cattle on the property around the first of April of that year. The new fence was not completed until sometime in July.
Plaintiff brought this action against the Police Jury, alleging the illegal removal of the boundary fence had caused him damages. He asserts that he had leased the Feist land for several years at an annual rental of $100 and used it for pasturing of his herd of approximately 20 cattle during the spring and summer months to enable him to grow coastal bermuda hay on his own land. Plaintiff explained that after completion of the harvest of hay in the fall he rotated the cattle back on his own land for the fall and winter months where they were more accessible.
Plaintiff contends that because of the defendant’s destruction of the fence and failure to restore it timely, he was forced to continue grazing his cattle on his tract which he intended to produce coastal ber-muda, and as a consequence lost the profit on an expected 2,000 bales amounting to $1,500. Additionally, he contends he was required to purchase additional feed and hay from April 15th through July 15th of 1969 at a cost of $250. He further alleges he was forced to liquidate his herd of cattle in the summer of 1969 at a loss estimated at $700.
Plaintiff also seeks reimbursement of the rental paid the Feist Estate of $100 and damages for mental distress and inconvenience of $1,000.
In defense of the action, the Police Jury denies there was any causal connection be *837 tween their removal of portions of the old fence in their reconstruction operation and the losses claimed by plaintiff, as the old fence was in such a state of decay and dilapidation that it would not have restrained cattle at the time it was first inspected by the employees of the Police Jury. Secondly, the Jury argues the plaintiff did nothing to minimize his own damages as he is required to do by La.Civ.Code Article 2323.
After a trial of the merits, the trial judge in written reasons for judgment found the evidence to show that the only fencing actually torn down by the defendant’s employees was situated on the property of defendant. He denied recovery on the basis that a landowner has the right to remove fencing or other improvements placed on his property by others.
On this appeal plaintiff argues the trial judge was in error in finding the fencing in question to be entirely on defendant’s property, and even if it should be true that the fence was located thusly, it was serving as a boundary between the two estates and could not be removed without judicial sanction under La.Civ.Code Articles 688, 838 and 85S. Plaintiff further contends the trial judge erred in not holding the Police Jury breached a duty owed to the plaintiff.
In argument before this court, plaintiff asserts his action arises from a combination of La.Civ.Code Article 667 with Article 2315. Article 667 prohibits a proprietor from doing any acts on his own estate which would deprive the owner of the adjoining estate from the enjoyment of his property. This article imposes an absolute liability without proof of fault when applicable. However, we do not find it has any applicability to the facts of this case. The jurisprudence seems to restrict its applicability to situations involving an ultra hazardous activity or a nuisance. We think plaintiff’s action falls under the general tort law provided by Article 2315 and the rights afforded a lessee under Article 2703 of the La.Civ.Code. Bergeron v. Con-Plex, Inc., 255 So.2d 397 (La.App. 1st Cir. 1971).
Under the provisions of Article 2703, the lessee clearly has the right to bring an action for damages for any loss sustained by him against one causing destruction or injury to the leased premises. Esmele v. Violet Trapping Co., 187 La. 728, 175 So. 471 (1937); Reynolds v. Egan, 123 La. 294, 48 So. 940 (1909); Bergeron v. Con-Plex, Inc., supra.
The fence in question was serving as an enclosure for the Feist land at the time of its removal. If the reconstruction of the old fence by the defendant in accordance with the private survey made for them was an attempt to establish the true boundary between these properties, it would not be binding on the Feist owners as no compliance was made with the provisions of Article 838 of the La.Civ.Code.
It may well be that at the time portions of the fence were removed, defendant’s employees could not reasonably foresee that any damage would ensue related to interference with pasturage of cattle as there were no cattle present on the Feist property. In the absence of a recorded written lease, defendant did not have constructive notice of plaintiff’s rights or intended use of the property. However, the record shows plaintiff notified the appropriate agents of the Police Jury sometime in January after discovery of the removal and made them fully aware of the lease and his intended use of the leased property beginning in April. The fence was not replaced until around the 1st of July. We think the defendant, after being notified of plaintiff’s rights, did not use due diligence in restoring the fence to protect plaintiff from loss.
Although there is some testimony by defendant’s agents blaming the delay on bad weather, we do not find this evidence sufficient to explain a delay of over four months. Therefore, we find some of the loss complained of by plaintiff was due to the fault of defendant.
Plaintiff clearly lost the use of the leased premises for the year in question and *838 should be due reimbursement for the rental of $100.
The evidence does not show the other items claimed by plaintiff resulted altogether from the acts committed by defendant. A party who has become the victim of a wrongful act of another owes a duty to minimize the loss sustained by him if he is reasonably able to do so. La.Civ. Code Article 2323. Unverzagt v. Young Builders, Inc., 252 La. 1091, 215 So.2d 823 (1968); Darnell v. Taylor, 236 So.2d 57 (La.App. 3d Cir. 1970) ; Pelloquin v. Missouri Pacific Railroad Co., 216 So.2d 686 (La.App. 2d Cir. 1969).
The evidence does not show plaintiff made any bona fide effort to secure other pasturage in lieu of using his own property on which he intended to grow coastal bermuda for haying purposes. Although he may have been put to some inconvenience in changing to another location and the cost of other pasturage could have been more, these costs would have been minimal compared to that claimed by him in this action.
We think the evidence that plaintiff sustained a loss from the sale and liquidation of his entire herd of cattle as a result of defendant’s actions is too speculative to justify an award for this claim. Plaintiff has suffered some inconvenience as a result of defendant’s actions and a nominal award for this element of damages is appropriate. Gullatt v. Ashland Oil & Refining Company, 243 So.2d 820 (La.App. 2d Cir. 1971), and cases cited therein. We deem the sum of $250 adequate for any inconvenience sustained by him.
For the foregoing reasons the judgment appealed from is reversed, and it is ordered, adjudged and decreed that there be judgment in favor of plaintiff, George B. Mc-Kinnon, and against defendant, Caddo Parish Police Jury, in the sum of $350 with legal interest thereon from date of judicial demand until paid, together with all costs of these proceedings, inclusive of cost of this appeal.