359 So.2d 279 (1978)
Cynthia Thomas GANT
v.
FLINT-GOODRIDGE HOSPITAL OF DILLARD UNIVERSITY and Argonaut-Southwest Ins. Co.
No. 8881.
Court of Appeal of Louisiana, Fourth Circuit.
May 10, 1978.
Rehearing Denied June 14, 1978.
*280 James J. Morrison, Jr., New Orleans, for plaintiff-appellant.
Lemle, Kelleher, Kohlmeyer & Matthews, Vance E. Ellefson, New Orleans, for defendants-appellees.
Before STOULIG, BEER and GAUDIN, JJ.
BEER, Judge.
Cynthia Gant was raped by an unknown assailant on May 15, 1972, at approximately 10:30 p. m. in the ground level laundry room of Smith Hall Nurses' Residence, which is affiliated with Flint-Goodridge Hospital. Until March of 1972, Mrs. Gant and her husband lived with her parents at their home. Then, before leasing an apartment in the Smith Hall Nurses' Residence building, she spoke with Mr. Mumfort, Flint-Goodridge Hospital's administrator, who, she states, stressed the safety features of that apartment complex, which included uniformed guard service. She and her mother visited the building prior to the Gants' leasing of an apartment in the building, and both noticed that a uniformed guard was on duty at that time.
Additional security measures observed by Mrs. Gant were: a locked doorway into the lobby of the building restricted to tenants and authorized personnel by the issuance of individual keys; a parking area to which one could gain admittance only by inserting a special card designed to open the gate mechanism; and a visitor screening system. Furthermore, Smith Hall was completely enclosed by the exterior walls of the building and a seven foot high fence.
The testimony of Elbert Ranson, a security officer for Flint-Goodridge, and of Oliver Thompson, whose duties included hospital security, disclosed that two of the security guards employed by the hospital-apartment complex had been terminated in March, two months before the assault, and had not, as of the date of the assault, been replaced. This reduction in force decreased the security patrol coverage that had previously been in effect for the hospital and the adjacent apartment facility.
Although C.C. art. 2703 absolves the lessor from liability for torts against the lessee committed by third persons who claim no right to the leased premises, Reynolds v. Egan, 123 La. 294, 48 So. 940 (1909), Bright v. Bell, 113 La. 1078, 37 So. 976 (1905), Gulf Coal Co. v. Bingaman, 6 La.App. 107 (Orl. 1927), Mrs. Gant here contends that the lessor assumed an obligation to provide a continuing high standard of security guard coverage as a particular condition of the lease and that subsequent failure so to maintain was a proximate cause of the attack. She claims that the security guard service which was implicit in the lease negotiations included the continued service of security guards who would have, ordinarily, been on patrol in the apartment building complex in such number or intensity of coverage as to have prevented the attack.
Mrs. Gant argues that she and her husband moved into Smith Hall primarily because the lessor's agent stressed its safe living conditions. Having created an aura of safety by the maintaining of various security services, including the security guard patrol, Mrs. Gant contends that the management failed to administer the property in accordance with the standard of safety it had promised to its tenants which proximately caused the tortuous conduct resulting in grave damage to her.
*281 According to the record, the apartment's security service was, at the time of the assault, operating on an "emergency" basis due to a shortage of manpower. The chief security officer testified that one guard was assigned to cover both the hospital and the residence hall and had been relieved of a previously existent obligation to punch the time clocks located at various checkpoints (apparently installed to assure guards would make their appointed rounds) in order that his time could be more fully utilized on patrol.
Even though the record indicates that the security guard services rendered in behalf of the occupants of the Smith Hall apartment complex had diminished from the standpoint of the number of security guards employed on a fulltime basis, we agree with the trial judge's apparent conclusion[1] that this fact does not constitute a basis upon which to impose liability for the unfortunate attack upon Mrs. Gant. We feel obliged to further observe that this most traumatic event might have occurred even with the security services being operated at full strength instead of being somewhat reduced. The record does not tell us how the rapist gained access to the area where the attack occurred.
At any rate, the ultimate resolution of this litigation rests upon factual determinations with respect to implied obligations of security maintenance and proximate cause, and we cannot say that the trial court manifestly erred in making such factual determinations as to form a Canter v. Koehring[2] protected basis of its dismissal of Mrs. Gant's claim. The judgment is affirmed.
AFFIRMED
STOULIG, J., dissents.
STOULIG, Judge, dissenting.
I respectfully dissent.
Plaintiff, Cynthia Gant, has appealed a judgment dismissing her damage suit against her lessor and its liability insurer for a rape she alleged was perpetrated against her because her landlord breached its duty to post a security guard in the apartment complex when the incident occurred. Defendants are Flint-Goodridge Hospital of Dillard University and Argonaut-Southwest Insurance Company.
There is no dispute that plaintiff was raped by an unknown assailant on May 15, 1972 at approximately 10:30 p. m. in the ground level laundry room of Smith Hall Nurses' Residence, a security-oriented apartment complex owned by Flint-Goodridge. Plaintiff's assailant escaped by vaulting a 7-foot cyclone fence at the rear of the patio area.
The issue of actionable negligence requires affirmative answers to these questions to support plaintiff's position: (1) Did the lessor have a duty to furnish a security guard at the time the rape occurred? (2) Is there a causal relationship between the absence of a security guard and the accomplishment of the assault?
Conceding a lessor ordinarily does not guarantee his tenant crime-free occupancy by the simple act of renting his property, plaintiff contends the renter here contractually assumed responsibility to provide tenant security. Smith Hall, located in a high crime neighborhood in the City of New Orleans, was designed and operated with secure, safe living as one of its salient attractions. Owned and operated by Flint-Goodridge Hospital, Smith Hall was offered on a preference basis to hospital employees and plaintiff, as an employee, was eligible.
Until March 1972, plaintiff lived with her parents at their home. Now she and her husband, expecting their baby, moved into their own apartment. Before leasing at Smith Hall, plaintiff testified she spoke with a Mr. Mumfort, the hospital administrator, who stressed the safety of the apartment complex and promised a uniformed guard was on duty at all times.[1] Plaintiff *282 and her mother viewed the apartment building and both noted there was an armed guard on duty on that initial visit prior to signing the lease.
Additional security measures noted by plaintiff were a locked lobby door to which only tenants and authorized personnel were given keys; a parking area to which one could gain admittance only by inserting a special card designed to open the gate mechanism; and a visitor screening system. Smith Hall was totally enclosed either by the exterior walls of the building or a high fence.
Plaintiff's testimony that a security guard was promised is believable because the defense's indirect admissions corroborate this. Elbert Ranson, chief security officer for Flint-Goodridge, testified in deposition that there had been continuous guard surveillance at Smith Hall between 3 p. m. and 8 a. m. the following morning but that the two guards who manned these shifts had quit and had never been replaced. Oliver Thompson, who was responsible for security at the hospital on the night of the rape, discussed the lack of guard personnel that day as an "emergency." What is interesting is that the emergency apparently was not due to illness or some event that occurred that day, rather, Thompson disclosed that two security guards who were terminated in March 1972 two months before the assault were never replaced.
Our law does not impose the obligation on a lessor to furnish crime-free premises to his lessee. In fact C.C. art. 2703 absolves the lessor from liability for torts against the lessee committed by third persons who claim no right to the leased premises. Reynolds v. Egan, 123 La. 294, 48 So. 940 (1909); Bright v. Bell, 113 La. 1078, 37 So. 976 (1905); Gulf Coal Co. v. Bingaman, 6 La.App. 107 (Orl.1927). The validity of plaintiff's legal position then hinges on whether the lessor contractually assumed the obligation to furnish a security guard as a condition of the lease.
We are not favored with written reasons for judgment and are not aware whether this suit was dismissed because the trial court found as a fact there was no lease obligation to supply a guard or because he concluded that the absence of a guard was not a proximate cause of the rape. If we assume the dismissal rests on the first premise, we are placed in the position of reversing a factual conclusion.
In this case we feel it would be warranted. Plaintiff's testimony is clear and unequivocal that a security guard was promised. Defense witnesses admit a security guard was normally scheduled to patrol the building from mid-afternoon through the following morning. The rape occurred during the hours when a guard was scheduled to have been on duty. We therefore find as a fact that Flint-Goodridge breached one of the obligations of its lease agreement in failing to have a security guard on the premises on May 15, 1972 at 10:30 p. m. when plaintiff was raped.
The breach of duty exists in this case only because the lessor assumed this responsibility when its agent entered into the lease agreement; therefore, we must first determine whether there is any basis in law for a negligence action founded on the "Of Offenses and Quasi Offenses" section of the Civil Code.
C.C. art. 2315 provides in part:
"Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it."
C.C. art. 2316 expands the preceding concept thus:
"Every person is responsible for the damage he occasions not merely by his act, but by his negligence, his imprudence, or his want of skill."
Our analysis of tort liability is based on the premise that plaintiff and her husband were living at Smith Hall because the lessor's agent stressed its safe living conditions. The fact that plaintiff felt secure enough to walk to the laundry area of the complex (located in a high crime neighborhood) at 10:30 p. m. attests to her reliance on the security promised by the lessor.
Having created an aura of safe-living in its building, we next consider whether the *283 management administered the property in accordance with the standard of safety it promised its tenants. Or stated another way, was the manager or administrator guilty of a negligent or imprudent act?
According to the defense witnesses, the security service was two men short when plaintiff and her husband moved in on April 1, 1972, and no one explained why they were not replaced. More than six weeks later when plaintiff was raped, the security service available to patrol both the hospital and the apartment residence was considered to be on an "emergency" basis due to a shortage of manpower. The situation was so critical according to the chief security officer that one guard was assigned to both the hospital and the residence hall. The guard was relieved of the obligation of punching the time clocks located at various checkpoints at Smith Hall (apparently installed to assure guards would make their appointed rounds) so that his time could be better utilized to patrol. I think the failure of Flint-Goodridge to replace the two vacancies on its armed guard staff for approximately two months was highly imprudent in view of the fact that they solicited tenants by promising security guards and other safe-living devices. Under 2316, the contractual breach is also a tort for which the lessor may be held accountable.
Finally I address the question of causation. I cannot imagine what concrete factual evidence could be produced either to prove or disprove absence of the guard was a proximate cause of the rape. Ranson testified guards are hired to deter crime and this is the best evidence plaintiff could produce to support her position. The dereliction of duty is defendant's and I would not bar plaintiff's recovery because causation in her case is of necessity a speculative issue. I believe Ranson's testimony that guards function as a deterrent is sufficient to establish a causal connexity between the rape and the breach of duty.
NOTES
[1] No written reasons were given for the dismissal of plaintiff's claim.
[2] 283 So.2d 716 (La. 1973).
[1] Mumfort, the hospital administrator, was not presented as a witness to rebut plaintiff's statements nor was any reason advanced for defendant's failure to do so.