615 So.2d 318 (1993)
Adiana Kathleen POTTER
v.
FIRST FEDERAL SAVINGS AND LOAN ASSOCIATION OF SCOTLANDVILLE, et al.
No. 92-C-2497.
Supreme Court of Louisiana.
February 22, 1993.
*320 William D. Grimley, Joseph T. Booth, Baton Rouge, for applicant.
Joseph A. Schittone, Jr., Kantrow, Spaht, Weaver & Blitzer, Baton Rouge, Thomas M. Richard, Hailey, McNamara, Hall, Larmann & Papale, Metairie, for respondent.
ORTIQUE, Justice[1].
A month after plaintiff allegedly complained to the assistant manager of her apartment complex about the inadequacy of the lighting in the complex's parking lot and was assured that the burned out floodlights would be replaced and the lighting system upgraded, plaintiff was raped and robbed in the poorly lit parking lot by an unknown assailant. The Trial Court granted summary judgment dismissing her suit for damages with prejudice in favor of defendants, the owner/lessor of the apartment complex and its managerial company. The Appellate Court affirmed, primarily based upon its determination that a lessor is not liable to its lessees for the intentional torts of third persons based upon LSA-C.C. art. 2703.[2] We granted writ of certiorari to consider whether article 2703 immunizes the lessor from liability precluding the lessee from pursuing tort and/or breach of contract claims against the lessor, despite allegations of the lessor's fault, when the intervening cause of the harm is the conduct of a third person who is not claiming a possessory right to the leased property.
We find that the lessee's right to seek redress from the lessor on claims that the lessor breached obligations ex contractu and ex delicto are unaffected by article 2703. Article 2703 applies only to the premises leased to the lessee and does not grant the lessor absolute immunity. When the lessor is otherwise free from fault, it merely limits the lessor's warranty of peaceful possession, excusing him from guaranteeing the lessee against disturbances caused by third persons not claiming any right to the leased premises. Applying these precepts to the pleadings, affidavits and exhibits of record, we find that all genuine issues of material fact relating to the lessor and manager's duties owed to lessee have not been resolved. We, therefore, vacate the summary judgment and remand for further proceedings.

FACTUAL AND PROCEDURAL HISTORY
On February 8, 1989, Adiana Kathleen Potter ("Potter") was raped and robbed in the poorly lit parking area of Turtle Creek Apartment complex ("Turtle Creek") where she resided. She filed this breach of contract and tort action against the owner/lessor of the apartment complex, First Federal Savings & Loan Association of Scotlandville ("First Federal"); the apartment complex's managerial company, Kim Knighten and Associates ("Knighten"); and State Farm General Insurance Company ("State *321 Farm"). Potter's petition alleges the exterior of the apartment complex was poorly lit and the complex lacked adequate security. It claims that prior to the occurrence of her rape, the Turtle Creek complex and other apartment complexes in the immediate area had been the subject of repeated burglaries and vandalism, and tenants had complained about the need for additional lighting because the poor lighting conditions invited crime. It alleges Knighten was under contract with First Federal for the management of Turtle Creek, and Knighten obligated itself to take all reasonable measures to ensure the safety of the complex's tenants. It further alleges that First Federal is vicariously liable for the negligent acts of its agent, Knighten; is contractually liable as lessor; and is strictly liable due to its legal garde of the complex as it was in ruin as a result of the burned out exterior lights.
First Federal, Knighten and State Farm moved for summary judgment claiming Potter was not owed any legal duty of protection from unforeseen and unforeseeable intentional criminal acts of a third parties and legal causation was lacking between Potter's damages and the allegedly inadequate lighting. Kim Knighten's deposition and affidavit and Potter's deposition accompanied the motion. The memorandum in support concluded Potter's petition must be dismissed due to the lessor's immunity from liability pursuant to article 2703, the absence of a duty owed to Potter to provide security or lighting and the lack of causation.
Defendants' uncontested material facts acknowledged the absence of a written lease between Potter and First Federal, Knighten and/or Turtle Creek. It declared no warranties or guarantees concerning safety were made by Kim Knighten to Potter. However, it did not state Knighten's other employees had not made warranties to Potter. Defendants' statement of uncontested material facts also asserted Kim Knighten was unaware of any crimes against persons occurring at the Turtle Creek complex and of any information which would have led her to believe that Potter's rape was foreseeable. It stated Kim Knighten was not aware of any specific complaints by Potter with regard to the lighting in the parking areas, but it did not indicate that Knighten had not received complaints from other tenants or that Potter had not raised such complaints to other Knighten employees. In her deposition, Kim Knighten testified that complaints about burned out exterior lights were responded to within one and a one-half days of the complaint. Yet, she admitted that, subsequent to the rape of Potter, the electrician replaced at least a dozen (12) flood-light bulbs out of a total of twenty-six (26) and the complex's exterior lighting was upgraded.
The deposition of Potter indicated she mainly dealt with James Coussins ("Coussins"), Knighten's assistant manager. She arranged with Coussins to obtain and sign a copy of the lease; however, he failed to produce it. She testified she complained to Coussins once or twice about the complex's exterior lighting being so inadequate that at night she could not differentiate between her automobile and someone else's vehicle. Speaking about a conversation she had with Coussins three or four weeks prior to the attack, Potter testified:
When I had complained about the lights, I knew that several complaints were before mine; and he assured me that it was being taken care of. And he said that Kim [Knighten] had arranged to have more powerful lights and more number of lights put out, and that to me was satisfactory.
Potter's opposition to the motion insisted article 2703 is irrelevant to her causes of action against defendants for breach of contract, negligence and strict liability. Potter urged that causation from the lack of security or foreseeability of the criminal act was a question of fact, inappropriate for summary judgment. Her opposition was supported by the affidavits of Erin Spaht, Karen Seibert and Frank J. Panepinto, CPP.
The affidavits of both Spaht and Seibert averred they had complained to Coussins about the poor lighting. They both described *322 the lighting as "dark as an unilluminated room with a single window at night" and it was "impossible to distinguish colors in the parking lot." Spaht averred she left notes for Knighten and talked to her in person concerning the poor lighting problem. Seibert's affidavit also recounted that she had informed Coussins about her dog causing an unknown male to jump up from behind a car in the parking lot. He told her he was just smoking a cigarette. Panepinto, a Certified Protection Professional, averred that sufficient lighting is a deterrent to crime and the lighting at the time of the rape was insufficient. He considered Turtle Creek a high crime area as in 1988, its surrounding 11 block area had 80 burglaries, 21 simple batteries, 4 aggravated batteries, 4 aggravated assaults, 43 suspicious persons, 5 prowlers, 1 robbery, 1 crime against nature, 1 peeping torn and 60 thefts from automobiles.
Following a hearing, the Trial Court declared First Federal and Knighten did not have legal duty to protect Potter from the harm she sustained.[3] It, therefore, granted defendants' motion for summary judgment and dismissed Potter's petition with prejudice. The Appellate Court affirmed. Potter v. First Fed. Sav. & Loan Ass'n of Scotlandville, 602 So.2d 1070 (La.App. 1st Cir. 1992). It determined that a lessor is not liable to its lessees for the intentional torts of third persons because article 2703 applies to torts committed by third persons on premises leased to the lessee and on premises to which the lessee has access. It also determined Potter could not prevail under the theory of strict liability and footnoted that she could not prevail under LSA-C.C. art. 2315 negligence. The dissenting judge found article 2703 inapplicable because the attack occurred in the complex's common area and found summary judgment improper as genuine issues of material fact remained.
From this adverse judgment, Potter sought writ from this court. We granted certiorari, 607 So.2d 547 (La.1992), to examine whether article 2703 immunizes the lessor from liability precluding the lessee from pursuing tort and/or breach of contract claims against the lessor, despite allegations of the lessor's fault, when the intervening cause of the harm is the conduct of a third person who is not claiming a possessory right to the leased property.

THE LIMITED PROTECTION AFFORDED A LESSOR UNDER ARTICLE 2703
To prevent their misapplication, the articles of the Civil Code must not be read in isolation. See LSA-C.C. art. 13. Codal articles must be read together, as an integrated whole. See Reynolds v. Egan, 123 La. 294, 48 So. 940, 946 (1908).
The lessor's duties ex contractu are set forth in the parties' contract of lease; in Title IX of the Civil Code, Of Lease, art. 2669 et seq.; and in Title III of the Civil Code, Obligations in General, art. 1756 et seq. The lessor's duties ex delicto are also provided by the Civil Code. For example, LSA-C.C. arts. 670, 2315, 2316, 2317, 2332. As a result, the duties of a lessor may have more than one source, as in the case of a negligent breach of a contractual obligation, in which case causes of action lie for both the breach and the negligence. Gray & Co., Inc. v. Ranger Ins. Co., 292 So.2d 829, 830 (La.App. 1st Cir.1974). The existence of the lessor/lessee relationship and contractual remedies, therefore, does not preclude lessor liability for breach of duties ex delicto. Bunge Corp. v. GATX Corp., 557 So.2d 1376 (La. 1990), reh'g den.; Federal Ins. Co. v. Insurance Co. of N. America, 262 La. 509, 263 So.2d 871 (1972); Thompson v. Cane Gardens Apts., 442 So.2d 1296 (La.App. 3d Cir.1983).
*323 Under the rules Of Lease, a lease is a bilateral contract by which one party binds himself to grant to the other the enjoyment of a thing during a certain time, for a certain stipulated price which the other party binds himself to pay. LSA-C.C. arts. 2669, 2674. From the nature of the contract of lease, the lessor is bound, without any clause to that effect, to maintain the thing in a condition such as to serve the use for which it was hired and to cause the lessee to be in peaceable possession of the thing during the continuation of the lease. LSA-C.C. art. 2692.[4] These are warranties implied in every contract of lease.[5] Failure of the lessor to fulfill either of these obligations is a breach of contract and may cause a finding of constructive eviction of the lessee. Comment, The Louisiana Law of Lease, 39 Tul. L.Rev. 798, 821 (1965); Cf. Keenan v. Flanigan, 157 La. 749, 103 So. 30 (1925); Gayle v. Auto-Lec Stores, 174 La. 1044, 142 So. 258 (1932); Credithrift of America, Inc. v. Sinclair, 430 So.2d 822 (La. App. 5th Cir. 1983).
Even though the nature of the lease contract binds the lessor to maintain the lessee in peaceable possession of the thing during the continuation of the lease via article 2692, there:
might well be that in some given case the lessor would be unable to comply with his obligations and yet be free from fault. The law, therefore, deals equitably with both parties under special circumstances. Under some circumstances it limits the relief of the lessee to a reduction of rent; ... under others, absolving the lessor of all blame, it requires the lessee to bring his action against third parties troubling or disturbing his rights.

Where the rights of the lessee are disturbed by third parties not claiming any right to the premises, and under circumstances which bring the case under the provisions of article 2703, the lessor is protected from attack by the lessee under its express terms. Reynolds v. Egan, 48 So. at 946-947. (emphasis added)
Thus, to protect the lessor when he is free from fault, article 2703 provides that the lessor is not bound to guarantee the lessee against disturbances caused by persons not claiming any right to the premises[6]; but in that case the lessee has a right of *324 action for damages sustained against the person occasioning the disturbance. Dixie Homestead Ass'n v. Intravia, 145 So. 561 (La.App.Orl.1933); Robicheaux v. Roy, 352 So.2d 766, 767 (La.App. 3d Cir. 1977), writ den., 354 So.2d 207 (La.1978). Simply stated, the lessor's implied warranty of peaceful possession does not extend to disturbances by third persons not claiming any right to the leasehold. Dixie Homestead Ass'n v. Intravia, supra; Keenan v. Flanigan, 157 La. 749, 103 So. 30, 37 (1925) ["a lessor is not bound to warrant his lessee against a disturbance caused by a person who does not claim under covenant with lessor, a right to be in a position to carry on the disturbance; e.g., a lessor is not responsible for a disturbance inflicted upon his lessee by a trespasser"]; see also Credithrift of America, Inc. v. Sinclair, supra.
This principle is clarified by article 2704 which sets forth that, if the persons by whom those acts of disturbance have been committed, pretend to have a right to the thing leased, the lessee shall call his lessor in warranty. LSA-C.C. art. 2704[7]; Bright v. Bell, 113 La. 1078, 37 So. 976, 980 (1905) ["It is true that the lessor is not bound to guaranty the lessee against disturbances caused by persons not claiming any right to the premises, but he is bound to protect the lessee in quiet enjoyment of the property leased as against persons who set up such claims; and in either case the possession of the lessee being possession of the lessor, the disturbance of one is necessarily the disturbance of the other."]; see 1 Aubry & Rau, Civil Law Translations § 310, Obligations (6th ed. 1965). Disturbances as used in articles 2703 and 2704, then, refers to disturbances of the lessee's possession by third persons in the context of the lessor's implied contractual warranties of article 2692.[8]See Cornelius v. Housing Authority of New Orleans, 539 So.2d 1250, 1251 (La.App. 4th Cir.1989), writ den., 544 So.2d 404 (La. 1989).
The lessee's right to seek redress from his lessor on claims that the lessor breached obligations ex contractu and ex delicto, therefore, are unaffected by the provisions of article 2703. Cf. Day v. Castilow, 407 So.2d 510 (La.App. 4th Cir. 1981).[9] Article 2703 does not impede the lessee's action for breach of contract against his lessor when the lessor is charged with fault. Reynolds v. Egan, 123 La. 294, 48 So. 940, 948 (1908); Comments, Landlord LiabilityObligation to Maintain Adequate SecurityA Comparative *325 Study, 59 Tul.L.Rev. 701, 729-731 (1985). Nor does article 2703 preclude the lessee's tort action against the lessor for injuries he sustained from intervening acts of a third person when the lessor's negligence or breach of other tort duties was a cause in fact and a legal cause of the lessee's injuries. Case law to the contrary maintaining article 2703 absolves the lessor from liability for the lessee's damages when a third person not claiming any right to the premises commits an intentional tort against the lessee, notwithstanding a breach of contract or tort fault by the lessor, inaccurately overstates the legal consequences of article 2703. For example, Gant v. Flint-Goodridge Hospital of Dillard University, 359 So.2d 279 (La.App. 4th Cir.1978), writ not consid., 362 So.2d 581 (La.1978); Reilly v. Fairway View II Assoc. Ltd. Partnership, 544 So.2d 73 (La.App. 1st Cir.1989). As a matter of law, article 2703 merely limits the lessor's warranty of peaceful possession, when the lessor is free from fault, excusing him from guaranteeing the lessee against disturbances caused by third persons not claiming any right to the premises. Parenthetically, by implication it applies only to the property leased to lessee and not to common areas or areas to which the lessee has only access, but not a possessory right.
In the instant case, plaintiff's right to proceed is not based upon the efficacy or ineffectiveness of article 2703. Jurisprudence which gives to article 2703 a meaning of absolute immunity is overreaching and overbroad. If plaintiff is able to establish facts sufficient to evoke the principles enumerated heretofore, she has a remedy at law.

PROPRIETY OF SUMMARY JUDGMENT
The motion for summary judgment, together with its pleadings, affidavits and exhibits, must now be examined to ascertain whether the lower courts properly determined no genuine issues of material fact exist and First Federal, Knighten and State Farm are entitled to judgment as a matter of law.
Appellate courts review summary judgments de novo, under the same criteria which governs the district court's consideration of the appropriateness of summary judgment. Schroeder v. Board of Sup'rs of Louisiana State University, 591 So.2d 342 (La.1991). The criteria set forth in the Code of Civil Procedure directs that plaintiff or a defendant in the principal or any incidental action, with or without supporting affidavits, may move for summary judgment in his favor for all or part of the relief for which he has prayed. LSA-C.C.P. art. 966(A).
Judgment on the motion is properly granted only if the pleadings, deposition, answers to interrogatories and admissions on file, together with affidavits, if any, show there is no genuine issue of material fact and the mover is entitled to summary judgment as a matter of law. LSA-C.C.P. art. 966(B); Penalber v. Blount, 550 So.2d 577 (La.1989); Vermilion Corp. v. Vaughn, 397 So.2d 490 (La. 1981). Because the mover has the burden of establishing that no material factual issue exists, inferences to be drawn from the underlying facts contained in the record must be viewed in the light most favorable to the party opposing the motion. Schroeder v. Board of Sup'rs of Louisiana State University, supra. A fact is material if its existence or non-existence may be essential to the plaintiff's cause of action under the applicable theory of recovery. Penalber v. Blount, supra.
Applying the foregoing criteria, as a matter of law, First Federal, Knighten and State Farm are not entitled to summary judgment. The lower courts erred in concluding that article 2703 absolved First Federal and Knighten from liability. As a consequence, their review of the issues presented and of the merits of the motion was impeded. Reviewing the summary judgment evidence in light of the lessor's lack of immunity, we find the evidence on record reveals genuine issues exist regarding whether First Federal and Knighten owed Potter contractual and/or tort duties to maintain adequate exterior lighting, to keep the complex in a reasonably safe condition *326 and/or to provide her a reasonably safe place. See generally Roberts v. Benoit, 605 So.2d 1032, 1050 (La.1992) (on reh'g); Harris v. Pizza Hut, Inc., 455 So.2d 1364 (La. 1984).
Potter's deposition indicates she spoke to Coussins once or twice about the lighting being so inadequate that at night she could not differentiate between her automobile and someone else's vehicle. Weeks prior to the attack, Coussins assured her the exterior lights were, "being taken care of. And... Kim had arranged to have more powerful lights and more number of lights put out." Since Potter's alleged lease is an oral one, Coussins' assurances could have modified the terms of the contract of lease, creating an express or implied contractual duty to maintain adequate lighting in the parking area. See note 8, supra.
Relative to this contractual duty to maintain adequate lighting, the implied warranty of habitability and the tort duty to maintain the property in a reasonably safe condition, the evidence conflicted on the speed at which Knighten replaced burned out flood lights. Defendants' statement of uncontested facts maintained that the bulbs were replaced within one and one-half days of Knighten's receipt of tenant complaints. Potter's deposition and Seibert and Spaht's affidavits, however, evince that inadequate lighting from burned out floodlights was a continuous problem and tenant complaints on the issue were not attended to promptly. Potter's position is supported by Knighten's admission that after the rape, it was necessary to replace 12 of the 26 floodlight bulbs.
Germane to the foreseeability of a criminal attack on Potter, Seibert's affidavit recounted that she had informed Coussins about her dog finding an unknown male behind a car in the parking lot, causing him to jump up from where he was seemingly lurking. Genuine issues, therefore, exist as to whether a dangerous condition was created from inadequate lighting, whether the inadequate lighting encouraged criminal attacks and/or enhanced their foreseeability, and/or, if there was a breach of a duty owed to Potter, whether that breach was causally connected to her damages.
Based upon these illustrative issues, defendants did not meet their burden of establishing an absence of genuine issues of material fact. Their affidavits, depositions and exhibits defendants introduced in support of their motion failed to meet the exacting burden required for summary judgment, thus, they are not entitled to judgment as a matter of law.

DECREE
For the reasons assigned, the summary judgment rendered in favor of First Federal, Knighten and State Farm is vacated and the case is remanded for further proceedings. Costs are assessed against defendant/respondents.
VACATED AND REMANDED.
CALOGERO, C.J., concurs and assigns reasons.
WATSON, J., joins in the opinion and adds brief concurring reasons.
WATSON, Justice, concurring.
The court of appeal erred in considering only Civil Code art. 2703. This is an art. 2315 (negligence) and art. 2317 (strict liability) case. I respectfully concur.
CALOGERO, Chief Justice, concurring.
There are genuine issues of material fact concerning defendant's alleged negligence. The majority is correct concerning the court of appeal's misapplication of Civil Code Article 2703.
NOTES
[1] Pursuant to Rule IV, Part 2, § 3, Dennis, J. was not on the panel which heard and decided this case. See the footnote in State of Louisiana v. Joey L. Barras and Kip J. Barras, 615 So.2d 285, decided this date.
[2] Art. 2703. Disturbance by third persons without right

The lessor is not bound to guarantee the lessee against disturbances caused by persons not claiming any right to the premises; but in that case the lessee has a right of action for damages sustained against the person occasioning the disturbance.
[3] In its oral reasons for judgment, the Trial Court cited Smith v. Howard, 489 So.2d 1037 (La.App. 1st Cir.1986) and Reilly v. Fairway View II Assoc. Ltd. Partnership, 544 So.2d 73 (La.App. 1st Cir.1989), in support of its judgment. In Reilly, the First Circuit found "art. 2703 applicable to absolve the lessor/owner from liability for an intentional tort committed by a third person, not claiming ownership, on lessee, notwithstanding that the attacker may have gained entry through an alleged defect in the leased premises." 544 So.2d at 75.
[4] Art. 2692. Obligations arising from nature of contract

The lessor is bound from the very nature of the contract, and without any clause to that effect:
1. To deliver the thing leased to the lessee.
2. To maintain the thing in a condition such as to serve for the use for which it is hired.
3. To cause the lessee to be in peaceable possession of the thing during the continuance of the lease.
[5] In addition to the warranties of peaceful possession and to maintain the thing, implied in every contract of lease is also the warranty of habitability contained in LSA-C.C. art. 2695. That article provides as follows:

The lessor guarantees the lessee against all the vices and defects of the thing, which may prevent its being used even in the case it should appear he knew nothing of the existence of such vices and defects, at the time the lease was made, and even if they have arisen since, provided they do not arise from the fault of the lessee; and if any loss should result to the lessee from vices and defects, the lessor shall be bound to indemnify him for the same.
Because the lessor guarantees the lessee against all vices and defects, not merely the apparent defects, the lessor who fails to fulfill this duty is held strictly liable. Gallagher v. Favrot, 499 So.2d 1205 (La.App. 5th Cir.1986), writ den., 503 So.2d 23 (La. 1987); Wood v. Cambridge Mut. Fire Ins. Co., 486 So.2d 1129 (La.App. 2d Cir. 1986); Comments, Landlord LiabilityObligation to Maintain Adequate SecurityA Comparative Study, 59 Tul.L.Rev. 701, 732 (1985). The duty is owed by the lessor strictly to the tenant. Id. As the lessor's liability stems from the lease contract, his liability under this article is ex contractu. Comment, The Louisiana Law of Lease, 39 Tul.L.Rev. 798, 836 (1965).
[6] "According to the French, the lessee alone must defend against such disturbances because they result from his negligence in not taking better care of the thing leased, or from activity directed against him personally, as distinguished from claims of right to the thing leased which ultimately concern the lessor. The disturbances for which the lessee has his own action include not only intentional acts, but also negligent acts which result in injury to the premises." Comments, Disturbance of the Lessee's Possession in Louisiana, 29 La.L.Rev. 101, 112 (1968) (citations omitted).
[7] Art. 2704. Disturbance by third persons pretending to have rights; call in warranty

If the persons by whom those acts of disturbance have been committed, pretend to have a right to the thing leased, or if the lessee is cited to appear before a court of justice to answer to the complaint of the person thus claiming the whole or a part of the thing leased, or claiming* some servitude on the same, he shall call the lessor in warranty, and shall be dismissed from the suit if he wishes it, by naming the person under whose right he possesses.
* The editorial comments to article 2704 note that there is an error in the English translation of the French text. "[A]nswer to the complaint of the person thus claiming the whole or a part of the thing leased, or claiming," should be "be compelled to give up the whole or a part of the thing leased, or to allow."
[8] Relative to the warranty to maintain the condition of the thing leased, a lessor may be held liable where he assumes an implied or express obligation to provide security maintenance to the lessee and a breach of that obligation is the proximate cause of a tort committed by a third person. U.S. Fidelity & Guar. Ins. Co. v. Burns Itern. Sec. Serv., Inc., 468 So.2d 662 (La.App. 4th Cir.1985), writ den., 470 So.2d 882 (La.1985); See also 59 Tul.L.Rev. at 729-731; Gant v. Flint-Goodridge Hospital of Dillard University, 359 So.2d 279 (La.App. 4th Cir. 1978), dissent 356 So.2d at 281, writ not consid., 362 So.2d 581 (La.1978). In Thompson v. Cane Garden Apts., 442 So.2d 1296 (La.App. 3d Cir. 1983), the allegations that, lessor expressly warranted a security guard was on duty and the lease contract provided lessor would maintain the premises in a decent and safe condition, yet as a result of the breach of the obligation an intruder gained access to plaintiff lessees' apartment, assaulting them, stated causes of action in contract and tort.
[9] In Day, the issues of whether the lessor breached the article 2315 duties it owed the lessee by facilitating the concealed presence of violent intruders upon the premises and failed to warn the lessee that such an intruder had previously assaulted a tenant, were found to be genuine issues of material fact precluding summary judgment.