11JOHNSON, Justice,
dissenting.
The Declaration of Independence states in pious terms, “... that all men are created equal, that they are endowed by their Creator with certain unalienable Rights, that among these are Life, Liberty and the pursuit of Happiness.” But those of us who have studied our history know that “all men” did not refer to women, who did not have the right to vote, and had few other rights. Neither did “all men” refer to an African, who was counted as three-fifths of a person and considered chattel.[1] The purpose of the Fourteenth Amendment to the United States Constitution was to rid our nation of the last vestiges of discrimination.
Art. I, Sect. 3 of the Louisiana Constitution of 1974 provides:
No person shall be denied the equal protection of the laws. No law shall discriminate against a person because of race or religious ideas, beliefs, or affiliations. No law shall arbitrarily, capriciously, or unreasonably discriminate against a person because of birth, age, sex, culture, physical *1203 condition, or political ideas or affiliations. Slavery and involuntary servitude are prohibited, except in the latter case as punishment for crime.
With Article 1, section 3, we finally got around to renouncing slavery (if any statutes continued to exist on our books) and determined that no person shall be denied equal protection of the laws. ^The latest trend in American constitutional law is to use “equal protection” as a concept not to eliminate discrimination, but to justify it. As a nation, we all now have collective amnesia. We are so color-blind and gender-blind, we have conveniently forgotten why certain statutes were added to the books in the first place. The Louisiana Minority and Women’s Business Enterprise Act, La.R.S. 39:1951 et seq., was enacted by the legislature to allow previously excluded minorities and women some participation in public works contracts and procurements of goods and services. If we take the demographics of the state into consideration, the small goals set by this statute hardly represent parity. (10% participation by all minorities: Black, Hispanic, Asian, and American Indian; 2% participation for women’s business enterprises).
In City of Richmond v. J.A. Croson,[2] the United States Supreme Court held that if a city could identify past discrimination in the local construction industry with the particularity required by the Fourteenth Amendment’s Equal Protection Clause, it would have the power to adopt race-based legislation designed to eradicate the effects of the discrimination. City of Richmond at 471, 109 S.Ct. at 709-10. After demonstrating a strong basis in evidence of the need for remedial action to ameliorate discrimination, the remedial action must be narrowly tailored to accomplish that goal. Even plaintiffs concede that City of Richmond allows a state to take race into account where there is a “compelling state interest”.
The present case was before the district court on plaintiffs Motion for Summary Judgment, wherein plaintiff urged there is no genuine issue of material fact and that mover is entitled to judgment as a matter of law.
The trial court granted the motion for summary judgment holding no person is entitled to a bid preference on the basis of race of the bidder; and no person may be denied the right to bid upon, fully and equally compete for, or enter into contracts with the State of Louisiana, or any state agency, on the basis of race of the bidder.
A Motion for Summary Judgment should only be granted when there are no genuine issues of material fact. Kennington v. H. Blume Johnson, Inc., 638 So.2d 1066 (La.1994); Potter v. First Federal Sav. and Loan Ass’n of Scotlandville, 615 So.2d 318 (La.1993). In the instant case, the lower court granted the Motion for Summary Judgment without affording defendants an opportunity to present evidence in accordance with the guidelines of City of Richmond. An eviden-tiary hearing should have been conducted to address the following issues:
I si. Whether or not defendants can identify specific past discrimination in the local construction industry against minority-owned contractors and female contractors;
2. Whether defendants can demonstrate a strong evidentiary basis for the need of the Louisiana Minority and Women’s Business Enterprise Act, La.R.S. 39:1951 et seq., as a remedial measure to eliminate past discrimination; and
3. Whether the Louisiana Minority and Women’s Business Enterprise Act is narrowly tailored to accomplish the goal of eliminating past discrimination.
Relying on the court’s decision in Sibley v. Board of Supervisors of Louisiana State University,[3] the majority concludes that the Louisiana constitution affords greater protection than the federal Equal Protection Clause, and concludes that the state cannot recognize a classification by race for any purpose. In construing a constitutional provision, the courts may consider the object sought to be accomplished by its adoption, and the evils, if any, sought to be prevented or remedied, in fight of the history of the times and the conditions and circumstances *1204 under which the provision was framed. Succession of Langa.[4] Article 1, Section 3 of the Louisiana Constitution of 1974 is intended to protect individuals in their right to equal protection of the laws, just as does the Equal Protection Clause of the Fourteenth Amendment. In this instance, a strict interpretation or construction would have the effect of denying, rather than protecting, individuals in their right to equal protection of the laws. The United States Supreme Court recognized this truth, and has consequently allowed race-based legislation to correct past discrimination subject to the “strict scrutiny” standard and upon the proper evidentiary showing. Moreover, if Sibley’s strict interpretation of Article 1, Section 3 of the Louisiana Constitution of 1974 will have continued results that are contrary to the legitimate goals of eliminating past discrimination, it should be rejected. We cannot declare ourselves blind to the predicament of a group previously discriminated against, when we are faced with documentation of past discrimination.
I cannot agree with the majority that should a Louisiana court find that discrimination against minorities or women presently exists in some aspects of the construction industry, this state is powerless to act to eliminate discrimination. Accordingly, I would remand this case for a full hearing to make the following factual determinations:
1. The extent to which minorities and women have been excluded Lfrom or included in the construction industry;
2. The number of construction contracts awarded to minorities or women prior to passage of the statute;
3. The percentage of minority and female contractors eligible to bid on public projects;
4. The percentage of total construction dollars awarded to minority or women contractors.
If the hearing determines past discrimination, this state has the authority to take remedial action narrowly tailored to eliminate discrimination.
For the foregoing reasons, I respectfully dissent.

. 488 U.S. 469, 109 S.Ct. 706, 102 L.Ed.2d 854 (1989).

. 477 So.2d 1094 (La.1985).

. 624 So.2d 1156, 1160 (La.1993).