# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 08-606

**JUAN FLORES, ET AL.**

**VERSUS**

**ALCO BUILDERS, INC., ET AL.**

**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF ACADIA, NO. 78665-G
HONORABLE DURWOOD W. CONQUE, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

## MARC T. AMY
## JUDGE

**\*\*\*\*\*\*\*\*\*\***

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Oswald A. Decuir and Marc T. Amy, Judges.

**AFFIRMED.**

**Thibodeaux, Chief Judge, concurs and assigns written reasons.**

> **Geoffrey Clement**
> **Lawrence J. Duplass**
> **Duplass, Zwain, Bourgeois & Morton**
> **Three Lakeway Center, 29ᵗʰ Floor**
> **3838 N. Causeway Boulevard, Suite 2900**
> **Metairie, LA   70002**
> **(504) 832-3700**
> **COUNSEL FOR DEFENDANTS/APPELLEES:**
> > **Interstate Fire & Casualty Insurance Company**
> > **Winfred Istre**
> > **Alco Builders, Inc.**

> **Roger G. Burgess**
> **Erin McCall Alley**
> **Baggett, McCall, Burgess, Watson & Gaughan**
> **Post Office Drawer 7820**
> **Lake Charles, LA   70606-7820**
> **(337) 478-8888**
> **COUNSEL FOR PLAINTIFFS/APPELLANTS:**
> > **Rosie Flores**
> > **Juan Flores**

**Carol S. Hunter**
**Assistant Attorney General**
**556 Jefferson Street, 4th Floor**
**Lafayette, LA   70501**
**(337) 262-1700**
**COUNSEL FOR DEFENDANT/APPELLEE:**
**State of Louisiana, through the**
**Department of Transportation and Development**

**Paul A. Holmes**
**Louisiana Municipal Association**
**Post Office Box 4327**
**Baton Rouge, LA   70821**
**(225) 344-5001**
**COUNSEL FOR DEFENDANT/APPELLEE:**
**City of Rayne**

**F. Douglas Wimberly**
**Cloyd, Wimberly & Villemarette, LLC**
**Post Office Drawer 5395**
**Lafayette, LA   70505-3951**
**(337) 289-6906**
**COUNSEL FOR DEFENDANT/APPELLEE:**
**Acadia Parish Police Jury**

AMY, Judge.

An eighteen-year old pedestrian was struck by a truck and killed on Interstate 10. Plaintiffs, in their individual capacities and as surviving parents of their son, brought suit against the Louisiana Department of Transportation and Development, among other defendants. The plaintiffs alleged that DOTD's failure to maintain the lighting system at the interchange contributed to the accident. DOTD filed a motion for summary judgment, arguing that DOTD was not in custody of the lighting system; thus, the plaintiffs could not meet their burden of proof at trial. The trial court granted summary judgment in favor of DOTD. The plaintiffs appeal. For the following reasons, we affirm.

**Factual and Procedural Background**

On August 17, 2001 at approximately 4:30 a.m, a truck driven by Winfred Istre, struck Javier Flores, a pedestrian, causing fatal injuries. Mr. Istre and his passenger, his son, testified that they were driving on Interstate 10, nearing an exit in Acadia Parish, when Mr. Flores stepped into the lane in which they were traveling. According to Mr. Istre's testimony, he "turned to the left first and then hit the brakes" but ultimately could not avoid hitting Mr. Flores.

The plaintiffs filed suit against Mr. Istre, his employer, the employer's insurance company, Acadia Parish, and the Louisiana Department of Transportation and Development. On June 21, 2007, DOTD filed the motion for summary judgment that is now at issue on appeal, contending that the custody element of La.R.S. 9:2800 could not be established by plaintiffs because DOTD had a written agreement with Acadia Parish. This agreement evidenced that construction of the lighting system by DOTD was conditioned upon Acadia Parish assuming the duties of maintenance and operation thereafter. The trial court granted the motion for summary judgment,

finding that DOTD did not have a duty to maintain the lighting at Exit 80, as "memorialized" in the 1970 contract.

The plaintiffs appeal, asserting that the trial court erred in determining that DOTD did not have a duty to prudently and reasonably maintain the lighting at this interchange. Further, the plaintiffs argue that the trial court erred in finding, based on its own "factual assumptions" that even if a duty did exist, the breach of that duty did not cause the accident.

**Discussion**

*Summary Judgment Standard of Review*

A trial court shall grant summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law." La.Code Civ.P. art. 966(B). Article 966(C)(2) provides that:

> The burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact.

"Appellate courts review summary judgments *de novo*, under the same criteria which governs [sic] the district court's consideration of the appropriateness of summary judgment." *Potter v. First Fed. Sav. and Loan Ass'n of Scotlandville*, 615 So.2d 318, 325 (La.1993). In light of this *de novo* standard, we do not review the appropriateness of the trial court's reasons for ruling as contested by the plaintiffs in

2

their assignment of error. Rather, we consider whether summary judgment was appropriate under the criteria considered below.

*Burden of Proof*

Regarding the burden of proof to establish the liability of a public entity, the court in *Netecke v. State ex rel. DOTD*, 98-1182, p. 7 (La. 10/19/99), 747 So.2d 489, 494, explains:

> A plaintiff may proceed against the State through DOTD under either a theory of negligence, based on La.Civ.Code art. 2315[1], or a theory of strict liability, based on La.Civ.Code art. 2317[2] and La.R.S. 9:2800[3]. In order for DOTD to be held liable, the burden of proof is the

---

[1] **Art. 2315. Liability for acts causing damages**

A. Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it.

B. Damages may include loss of consortium, service, and society, and shall be recoverable by the same respective categories of persons who would have had a cause of action for wrongful death of an injured person. Damages do not include costs for future medical treatment, services, surveillance, or procedures of any kind unless such treatment, services, surveillance, or procedures are directly related to a manifest physical or mental injury or disease. Damages shall include any sales taxes paid by the owner on the repair or replacement of the property damaged.

[2] **Art. 2317. Acts of others and of things in custody**

We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody. This, however, is to be understood with the following modifications.

[3] Prior to its 2003 amendment, the statute at the time of the accident provided:

**§ 2800. Limitation of liability for public bodies**

A. A public entity is responsible under Civil Code Article 2317 for damages caused by the condition of buildings within its care and custody.

B. Except as provided for in Subsection A of this Section, no person shall have a cause of action based solely upon liability imposed under Civil Code Article 2317 against a public entity for damages caused by the condition of things within its care and custody unless the public entity had actual or constructive notice of the particular vice or defect which caused the damage prior to the occurrence, and the public entity has had a reasonable opportunity to remedy the defect and has failed to do so.

3

same under either theory. That is, the plaintiff bears the burden of showing that:

(1)  DOTD had custody of the thing that caused the plaintiff's injuries or damages;

(2)  the thing was defective because it had a condition that created an unreasonable risk of harm;

(3)  DOTD had actual or constructive knowledge of the defect and failed to take corrective measures within a reasonable time; and

(4)  the defect in the thing was a cause-in-fact of the plaintiff's injuries.

*Brown v. Louisiana Indem. Co.*, 97-1344 (La. 3/4/98), 707 So.2d 1240, 1242; *Lee v. State, Through Dep't of Transp. & Dev*., 97-0350 (La. 10/21/97), 701 So.2d 676, 677-78. To recover, plaintiff bears the burden of proving all these inquiries in the affirmative and failure on any one is fatal to the case.

(Footnotes added.)

DOTD's motion for summary judgment questioned the plaintiff's ability to establish custody. The parties and the trial court addressed custody in terms of a duty owed. The plaintiffs contend that the State voluntarily undertook the duty to light the exit, and, once undertaken, the duty could not be delegated.

The inquiry of duty is a matter of law, and the threshold question is whether the plaintiff has any law based in statute, cases, or "general principles of fault" to give his claim merit. *Faucheaux v. Terrebonne Consol. Gov't*, 615 So.2d 289, 292 (La.1993). This court affirmed a trial judge's finding of "whatever lighting duty the Department of Transportation and Development (DOTD) and the City of Lake Charles had, they did not owe the decedent a legal duty to provide lighting in order

---

C.  Constructive notice shall mean the existence of facts which infer actual knowledge.

4

to protect him while illegally crossing Interstate 10 while intoxicated and on foot."

*Landry v. Bickham*, 608 So.2d 658, 659 (La.App. 3 Cir. 1992).

Although the plaintiffs acknowledge that there was no original duty to light the exit, they instead argue that once the undertaking of lighting the exit occurred, the duty was created, and the State had to be prudent and careful as to the lights.

Presented by DOTD in support of its motion, the contract between Acadia Parish and DOTD, dated March 19, 1970, reads in pertinent part:

> WHEREAS, the Department, with the assistance of the U.S. Bureau of Public Roads, proposes to construct and install a roadway lighting system within the Parish at the interchange of Routes I-10 and La 13 *provided that upon it[s] completion, the Parish will assume its maintenance and operation; and*
>
> WHEREAS, the Parish is agreeable to the installation of the roadway lighting system, *and upon its completion, to maintain and operate the system.*
>
> NOW, THEREFORE, in consideration of the premises and mutual dependent covenants herein contained, the parties hereto agree as follows:

ARTICLE I

> For the purpose of identification, the construction and installation of the proposed lighting system will be designated as State Project No. 450-04-27, Federal Aid Project No. I-10-2(33)80.

ARTICLE II

> The Department will prepare complete plans and specifications for the proposed lighting system to be constructed and installed by the contract method and, prior to the receipt of bids, will submit such plans and specifications to the Parish for its approval.

ARTICLE III

> *Upon satisfactory completion of the lighting system and its final acceptance, the Parish obligates itself to assume full responsibility for its maintenance and operation.*

_____This agreement shall be binding upon and inure to the benefit of the parties hereto, their successors and assigns.

(Emphasis added.)

There is no dispute that the contract was in effect at the time of the accident involving Mr. Flores. The plaintiffs argue that "[n]othing in the contract could lead a Court to conclude that the State had delegated its duty to inspect the system or to enforce the Acadia Parish obligation to maintain the system," although no evidence was put forth to support this argument.

Our review of the contract indicates that DOTD assumed the duty to construct and erect the lighting system at the I-10 and La. Hwy. 13 interchange. It did not assume the duty of its operation and maintenance. Instead, its performance was initially conditioned upon Acadia Parish accepting "full responsibility" for the maintenance and operation upon its completion. Testimony from Mr. Moss and Mr. Douglas, both DOTD engineers, reveals that DOTD installs lighting systems at the request of local entities and subject to the condition that the local entity will operate and maintain it. Mr. Moss further established that inherent in the agreement to operate and maintain the lighting is the agreement to inspect it. Under the terms of the contract, DOTD never had a duty to inspect or maintain the lighting. This lack of duty pretermits consideration of whether that duty could be delegated.

Further, La.R.S. 48:193(A) provides:

The department is hereby directed to repair and to keep in operating condition at its sole cost and expense, all municipal roads or streets which form a continuation of one of said highways; however, the final decision as to the designation or location of the particular municipal road or streets to be placed in the state system shall be left entirely up to the department. At the request of the governing authority of a municipality, the work may be contracted out to such municipality, but

all such maintenance costs shall be paid for by the state, provided that *the state shall not be responsible for the maintenance* of sewers, *street lighting*, gas and water mains, and other public utilities.

(Emphasis added.)

Louisiana Revised Statutes 33:3659, entitled "Municipality to operate lighting systems; financial aid; special tax," provides that: "[a]fter the system has been completed and accepted, *the full ownership of it shall vest in the municipality*, except where the lighting system has been installed on a one-time rental or lease basis, in which case the lighting system shall remain the property of the lessor." (Emphasis added.)

In *Loyd v. City of Ruston*, 622 So.2d 1219, 1221 (La.App. 2 Cir. 1993), a case in which a car collided with a collapsed lighting standard, the second circuit explained that La.R.S. 33:3659 and La.R.S. 48:193(A) are included in a statutory scheme that "uniformly contemplate[s] state financial and other assistance to municipalities for controlling traffic on and *lighting streets and highways within municipal boundaries*." (Emphasis added.) Despite the existence of a contract alleviating DOTD of legal responsibility, the driver of the vehicle sued, asserting that DOTD was liable as owner of the light standard. The second circuit held that:

> By operation of law and by the 1969 contract, the City of Ruston effectively relieved the state from legal responsibility for, and assumed the position of "owner or custodian" of, the lighting system on I-20 through Ruston. The city became responsible for custody, maintenance and operation of the lighting system on Interstate 20 within the municipal limits of Ruston insofar as legal liability may be imposed for the ruin of that system or any defects therein, notwithstanding that DOTD was the owner of Interstate 20 through Ruston.
>
> The contract between DOTD and the City of Ruston delegating this responsibility, being one specifically that is contemplated by Titles 33 and 48, will be given legal effect.

*Id.* at 1222.

7

The plaintiffs rely on *Marsalis v. LaSalle*, 94 So.2d 120 (La.App. Orleans 1957) in their assertion that a duty, once assumed, cannot be delegated. *Marsalis* differs from the present case as it did not involve a situation in which a contract specifically delineated the actors' respective duties. Further, *Marsalis* presented the principle that once a person "voluntarily undertakes to care for, or to afford relief or assistance to, an ill, injured, or helpless person," he or she "is under a legal obligation to use reasonable care and prudence in what he does." *Id* at 125. We do not find that the type of voluntary duty discussed in *Marsalis* pertains to the present factual scenario, which is governed by a statutory scheme and involves a contract to construct a lighting system in exchange for an agreement to undertake its maintenance and operation.

In light of the statutes, contract, jurisprudence, and summary judgment evidence, we find that DOTD proved a lack of at least one element: that of custody and/or duty.

Finally, the plaintiffs urge that the court "erred in finding that the lighting did not make a difference." Because DOTD did not have a duty as alleged by the plaintiffs, it is unnecessary to determine whether DOTD's failure to maintain the lighting system was a cause in fact of the accident for purposes of La.R.S. 9:2800. The plaintiffs did not meet the burden of proof required by La.Civ.Code arts. 2315 and 2317. Accordingly, this assignment is without merit.

**DECREE**

For the foregoing reasons, the grant of summary judgment in favor of DOTD is affirmed. All costs of these proceedings are assessed against the plaintiffs, Juan and Rosie Flores.

**AFFIRMED.**

8

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

08-606

JUAN FLORES, ET AL.

VERSUS

ALCO BUILDERS, INC., ET AL.

**THIBODEAUX, Chief Judge, concurring.**

While I agree that summary judgment was properly granted to the DOTD, I disagree with the assertion that the DOTD did not have a duty. The contract between Acadia Parish and the DOTD obligated Acadia Parish to assume the maintenance and operation of the roadway lighting system. As I interpret the contract, however, it did not relieve the DOTD of its obligation to ascertain that the parish was fulfilling its contractual obligations pursuant to the March 19, 1970 agreement. Once the DOTD undertook the construction and erection of the lighting system, it imposed upon itself the obligation to make certain that the parish would maintain and operate the system in a prudent manner according to the terms of the agreement between itself and Acadia Parish.

Under the procedural mechanism of our summary judgment process, however, it was incumbent upon the plaintiffs to come forward with evidence sufficient to carry their burden of production once the DOTD, as the mover, satisfied its initial burden of going forward and proving a lack of a duty. There is nothing in the record to suggest that the plaintiffs carried their burden of going forward with credible evidence to create a genuine issue of material fact.

For the foregoing reasons, I concur.