# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT

## 24-615

**JAZZLINE PICKNEY, INDIVIDUALLY, AND ON BEHALF OF HER MINOR SON, ROTREVIOUS PICKNEY**

**VERSUS**

**JAMIE L. RICHARD D/B/A DUVAL STREET APARTMENT; JLR, LLC; ABC PROPERTY MANAGEMENT COMPANY; DEF SECURITY COMPANY; JOHN/JANE DOE 1; ABC INSURANCE COMPANY; TYRONE SENEGAL; KENDARIOUS BREAUX; AND JOHN DOE 2 ON BEHALF OF HIS MINOR SON, KENDALL RAY LEOPUAL**

**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. C-20186038
HONORABLE THOMAS R. DUPLANTIER, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

**LEDRICKA J. THIERRY**
**JUDGE**

**\*\*\*\*\*\*\*\*\*\***

Court composed of Van H. Kyzar, Ledricka J. Thierry, and Guy E. Bradberry, Judges.

**AFFIRMED.**

**Jason M. Baer**
**Nicholas M. Anthony**
**Baer Law, LLC**
**3000 Kingman Street, Suite 200**
**Metairie, LA 70006**
**(504) 372-0111**
**COUNSEL FOR PLAINTIFFS/APPELLANTS**
    **Jazzline Pickney, individually, and on behalf of her minor son,**
    **Rotrevious Pickney**

**Roderick "Rico" Alvendia**
**Alvendia, Kelly & Demarest, LLC**
**909 Poydras Street, Suite 1625**
**New Orleans, LA 70112**
**(504) 200-0000**
**COUNSEL FOR PLAINTIFFS/APPELLANTS**
    **Jazzline Pickney, individually, and on behalf of her minor son,**
    **Rotrevious Pickney**

**Gregory J. Chiartano**
**Law Office of Gregory Chiartano**
**3801 Canal Street, Suite 211**
**New Orleans, LA 70119**
**COUNSEL FOR PLAINTIFFS/APPELLANTS**
    **Jazzline Pickney, individually, and on behalf of her minor son,**
    **Rotrevious Pickney**

**Anne Derbes Wittman**
**Matthew A. Woolf**
**Erin Pelleteri Howser**
**Baker, Donelson, Bearman, Caldwell & Berkowitz, PC**
**201 St. Charles Avenue, Suite 3600**
**New Orleans, LA 70170**
**(504) 566-5200**
**COUNSEL FOR DEFENDANTS/APPELLEES**
    **JLR, LLC, Richaud Real Estate, LLC, and Annette Henderson**

**THIERRY, Judge.**

Plaintiffs-Appellants, Jazzline Pickney, individually, and on behalf of her minor son, Rotrevious Pickney, appeal the trial court's grant of Defendants' Motion for Summary Judgment, dismissing Plaintiffs' personal injury lawsuit. For the reasons that follow, we affirm.

## FACTS AND PROCEDURAL HISTORY

On Friday, May 4, 2018, Plaintiff, Rotrevious Pickney, skipped school and went to the Duval Street Apartment Complex, located at 201 Duval Street, in Lafayette, Louisiana. According to Plaintiff, he was carrying a gun for "protection," although he claimed the gun was not loaded. It was alleged by Plaintiff that he went with a friend, Qualen (Plaintiff stated in his deposition that he did not know Qualen's last name), who allegedly knew people who lived at the complex. Although he denied he went to the apartment complex to play dice, he participated in a dice game for several hours. Plaintiff never went into any apartment while there that day.

There were approximately twelve to fifteen people participating in the game, and Plaintiff acknowledged several were in possession of guns. At some point, Plaintiff was accused of stealing money during the game and a fight broke out between Plaintiff and Kendarius Breaux. Plaintiff maintained he was not the aggressor in this fight but only sought to defend himself from Breaux. Plaintiff did acknowledge that he "got into it" with Breaux, perhaps intimating that it was more than simply self-defense on his part. They were eventually separated by Kendall Ray Leopaul, who was also playing in the game.

Following the fight, Plaintiff stepped away for a moment, but rather than leaving, he came back to the game. A review of the video introduced at trial showed that when Plaintiff returned towards the game, he and Breaux initially "squared off"

again but did not come to blows this time. According to Plaintiff, a man in a wheelchair pointed a gun at him, and Plaintiff decided to leave at that point. The video shows Plaintiff beginning to walk away from the game about twenty seconds after "squaring off" with Breaux. As he is walking off, he turns several times to look back towards the dice game. Breaux then fired a weapon at Plaintiff, who then began running away. Several more shots were fired by Breaux, Leopaul, and Tyrone Senegal. Plaintiff was struck several times. Tragically, he was rendered a paraplegic as a result of his injuries. Police arrived on the scene approximately five minutes after the shooting.

Breaux, Leopaul, and Senegal were all criminally charged as a result of the shooting of Plaintiff. At the time of the shooting, only Senegal was a tenant in the complex. In his deposition, Plaintiff stated he knew Breaux, who attended the same high school as Plaintiff. Plaintiff also stated he "knew of" Senegal. It was unclear from his deposition testimony if Plaintiff knew Leopaul.

Duval Street Apartment Complex was a sixteen-unit apartment complex located at 201 Duval Street, Lafayette, LA. The complex was owned by JLR, LLC, a Louisiana limited liability corporation. It was managed by Annette Henderson.

In 2015, a video surveillance system consisting of twelve cameras was installed. The cameras were then replaced in 2017. When the cameras were replaced, JLR gave the Lafayette Parish Police Department twenty-four-hour access to monitor the surveillance system and executed a waiver that allowed the Lafayette Parish Police Department to access the complex at any time. The surveillance cameras were not monitored by Defendants in real time. Ms. Henderson testified in her affidavit that although she advised of the presence of the surveillance system to tenants or prospective tenants, she did not tell them that it was monitored twenty-

2

four hours a day or monitored in real time. It was established on the date of the shooting, the video surveillance system was operational (as there was a video of the events leading to the incident).

It was established the following signs were posted on the Complex premises:

- Neighborhood Under 24-Hour Video Security With Local Law Enforcement. We Report All Suspicious Persons and Activities;

- No Trespassing This Property Protected by Video Surveillance Trespassers Will Be Prosecuted

On October 5, 2018, Jazzline Pickney, individually and on behalf of her minor son, Rotrevious Pickney, filed suit against numerous defendants, including JLR, LLC, a Louisiana limited liability corporation that owns/operates the Duval Street Apartment Complex, Kendarius Breaux, Kendall Ray Leopaul, and Tyrone Senegal. The petition for damages asserted general negligence and premises liability claims against Defendants.

A First Amended Petition for Damages was filed on April 7, 2020, which added Richaud Real Estate (operator of the complex), Annette Henderson (the property manager), and Great Lakes Insurance SE (the insurer of JLR, LLC) as additional Defendants. A Second Amended Petition was filed on July 15, 2020, to assert additional allegations. A Third Amended Petition was filed on April 21, 2022, to substitute Rotrevious Pickney for his mother as he had reached the age of majority.

Ms. Richaud filed an Exception of No Cause of Action, which was sustained by the trial court. All remaining Defendants answered the petition. Plaintiffs conceded they had no viable premises liability claim, and an order was issued dismissing Plaintiffs' claims pursuant to La.Civ.Code arts. 2317 and 2317.1.

3

On September 16, 2022, Defendants, JLR, LLC; Richaud Real Estate, and Annette Henderson filed a Motion for Summary Judgment to have Plaintiffs' claims against them dismissed. The trial court denied the motion finding a genuine issue of material fact as to whether signage posted at the complex was sufficient to establish the assumption of a duty of protection. The trial court, in oral reasons, stated as follows:

> First glance, to me, I'm like, well, this isn't even close. How can you hold – so first of all, Mr. Pickney doesn't live at the complex. One of the people in the dice game may have lived at the complex or was there as an invitee. The other three people involved were not even invitees, but showed up to play whatever you do with dice and money in the parking lot. The case – so again, having said that, I read the briefs and studied them and looked at them, and, to me, this is all about what you put on your sign in the parking lot of the complex. So if you don't put anything in the parking lot, we're probably not here today. Because I don't think that – well, I know the jurisprudence does not provide any liability for an owner of a premise, for a third party action which takes place in their premises short of knowledge of criminal activity in the parking lot, prior – in this case, three years ago there was criminal action, but there was no allegation that there was an ongoing incidences of criminal activity which should have put this owner on notice of having to put up fences, and police, or anything else. It's about whether or not what you put on that sign caused you to assume a greater responsibility for, not only your invitees but the general public, who came onto your property. Again, I've read the <u>Pizza Hut</u> case and the other cases that passed down from those, and I think, for me, there certainly are cases that talk about assuming responsibility by the actions of an owner of a building and whether or not this is that type of case. Gosh, its close.
>
> . . . .
>
> The sign says exactly this: Neighborhood under 24-hour video security with local law enforcement. We report all suspicious persons and activities. . . . If you would have just put the no trespassing sign, we're not here today.
>
> . . . .
>
> And for me, if – it is a factual question for me, and that's where I think the issue – if it were just a legal question, I would say I'm in your corner. But I don't think it is because somebody, the jury or somebody,

4

is going to have to decide what you meant. So what if you were – you were doing a 24-hour surveillance and had it – this card game was ongoing, as I read it, for hours. And so ongoing with people who don't belong in your parking lot. And, again, are we supposed to protect people against their own actions, I don't know.

. . . .

I don't think the legal question that comes to me is the assumption and I think your client has assumed that risk by posting the sign in the manner in which it was. The jury is going to have to decide whether or not there was a time lapse that could have prevented it, not prevented it, and all those things. Is this a really really close case to being – yeah. But its still something that I think the fact finder is going to have to decide.

Defendants applied for writs with this court, which were denied on May 26, 2023, stating: "We find no error in the trial court's ruling."

On June 21, 2024, Defendants again filed a Motion for Summary Judgment, noting the recently issued Louisiana Supreme Court opinion in *Evans v. Abubaker*, 23-955 (La. 5/10/24), 384 So.3d 853. Defendants also introduced the deposition testimony of Rotrevious Pickney, wherein he stated he never saw any of the signs posted at the apartment complex, and introduced screenshots from the surveillance video. After a hearing on the motion on July 22, 2024, the trial court granted the summary judgment in Defendants' favor, finding the *Evans* case mandated the granting of summary judgment. The trial court reasoned as follows:

I struggle now with the concept, particularly, with the new Supreme Court case, in Evans, as to whether or not a business owner owes a responsibility to someone who comes upon their premise and, as a result of their conduct, is injured. And I think this clearly -- for me Evans, clearly, sets forth a scenario where someone, who is not a renter, who is not invited by the renter, who comes onto the premises and engages in conduct that causes his injury, whether that's criminal conduct – I think criminal is only one of the adjectives used in the Evans decision, its only one of those, and so, for me, I struggle now combining that decision with what occurred in this case. And, secondarily, as I thought early this morning, what if it was an obligation once you say we have 24-hour surveillance, does that mean its real-time to the police department? At what time was the assumption of the risk by the

5

defendants to call law enforcement to send security over or whatever else. Do you do that because 20 African-American – I think they were all males but – were on a premise? Does that prototype a type of individual who gets the police called on them? I mean, when does it meet – when does it make that assumption happen? Does it happen when the first fight happens that ends up dispersing and them continuing to play? Do you lose that responsibility when Mr. Pickney leaves the premise and then he returns? Do you call when they return?

Again I say all these things because it causes me a concern for having said did they assume the risk by putting this out there. What could they have done and what would the trier of fact be in a position to decide in this case as to whether that assumed risk was one that could have even prevented the injury in the first place?

. . . .

Okay. So I find that this plaintiff was not owed the duty, as per Evans, and if that duty had been present, I do not believe that – if he was the party who should have been entitled to that duty, which I don't believe he is under Evans based on that scenario, I do not believe a trier of fact could find that the time in which it could have been called in was reasonable in order to prevent the injury which occurred. For these reasons, I grant the motion for summary judgment.

Plaintiffs appeal the trial court's grant of summary judgment, asserting as its lone assignment of error that the trial court "erred in granting the motion for summary judgment."

## ANALYSIS

The supreme court in *Evans*, 384 So.3d at 856–57, 857–58 (alterations in original) (footnote omitted), set out the applicable appellate standard of review on motions for summary judgments:

This court applies a *de novo* standard of review in considering lower court rulings on summary judgment motions. **Bolden v. Tisdale**, 21-00224, pp. 10-11 (La. 1/28/22), 347 So.3d 697, 706-07; **Bufkin v. Felipe's Louisiana, LLC**, 14-0288, p. 3 (La. 10/15/14), 171 So.3d 851, 854; **Catahoula Parish School Board v. Louisiana Machinery Rentals, LLC**, 12-2504, p. 8 (La. 10/15/13), 124 So.3d 1065. 1071. Thus, we use the same criteria that govern the district court's consideration of whether summary judgment is appropriate. **Id**. Pursuant to La.C.C.P. art. 966(A)(3)-(4), a court must grant a motion for summary judgment if the pleadings, memoranda, affidavits,

6

depositions, answers to interrogatories, certified medical records, certified copies of public documents or public records, certified copies of insurance policies, authentic acts, private acts duly acknowledged, promissory notes and assignments thereof, written stipulations, and admissions show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. **Id**. The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action, except those disallowed by Article 969; the procedure is favored and shall be construed to accomplish these ends. La. C.C.P. art. 966(A)(2).

The burden of proof rests with the mover; nevertheless, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. La. C.C.P. art. 966(D)(1). The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. **Id**. "When a motion for summary judgment is made and supported as provided [in La. C.C.P. art. 967(A) ], an adverse party may not rest on the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided [in La. C.C.P. art. 967(A)], must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be rendered against him." La. C.C.P. art. 967(B). A motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(A)(3).

Plaintiffs maintain Defendants, although perhaps not owing a general duty, in this case "assumed a duty to provide security for their tenants and guests through its own purposeful actions due to concern of known criminal activity." Plaintiffs also maintain Defendants "owed a duty because the violence endured by Plaintiff was clearly imminent and foreseeable, serious, and more than a mere possibility." Either of these principals, Plaintiffs suggest, is sufficient to warrant reversal of the grant of summary judgment.

7

Plaintiffs argue Defendants undertook intentional, affirmative steps to provide twenty-four-hour, real-time surveillance in 2015, arguably in response to a violent crime that occurred onsite. Signage was then placed throughout the complex stating that the premises were monitored and "protected" twenty-four hours per day through that surveillance. Plaintiffs also assert Defendants executed a waiver that allowed local law enforcement to access the complex at any time, presumably due to its heightened concern over criminal activity.

Plaintiffs maintain whether Defendants had a legal duty to undertake these security measures is not at issue; but once Defendants chose to undertake these measures, they assumed a duty, a duty that they failed to uphold with reasonable care as to Rotrevious Pickney. Plaintiffs believe whether there was an assumption of a duty is a question of fact, and thus summary judgment was inappropriate, as there were genuine issues as to whether Defendants assumed a duty to protect those on their property.

Whether liability exists under a particular set of facts is determined by using the duty-risk analysis. *Posecai v. Wal-Mart Stores, Inc.*, 99-1222 (La. 11/30/99), 752 So.2d 762. Under a duty-risk analysis, a plaintiff must prove (1) he was owed a duty; (2) that duty was breached; (3) the defendant's conduct was a cause-in-fact of the injuries; (4) the defendant's conduct was a legal cause of the injuries; and (5) the plaintiff suffered actual damages. *Jones v. Centerpoint Energy Entex*, 11-02 (La.App. 3 Cir. 5/25/11), 66 So.3d 539, *writ denied*, 11-1964 (La. 11/14/11), 75 So.3d 946. If the plaintiff fails to prove any one element, the defendant is not liable. *Id.* Here, the trial court found Plaintiffs did not establish there was a duty under the facts of this case.

8

Plaintiffs argue the signs created an express or implied assumption of a duty on Defendants' part. A plain reading of the signs shows that the property is under twenty-four-hour "video security" and that local law enforcement has access to the video surveillance. A reading that the camera feeds were being monitored in real time, twenty-four-hours a day is beyond the plain language of the signs. Defendants note that Plaintiffs have provided no evidence, be it from a tenant, invitee or expert, that the sign at issue represented that the video surveillance was being monitored in real time. Moreover, Plaintiff specifically testified that he never saw, let alone read, any of the signs posted at the complex. Thus, it is clear he did not rely upon any of that language to assume there was a duty to protect him. We have found no cases where it has been held a duty exists to protect against the criminal activity of third persons where the person claiming to be owed a duty was unaware of any assumed duty. For there to be an express or imposed assumption of a duty, it must be received and relied upon by the person asserting the duty.

Plaintiffs cite *Harris v. Pizza Hut of Louisiana, Inc.*, 455 So.2d 1364 (La.1984), and *Posecai*, 752 So.2d 762, as support that "landlords must protect victims from third-party criminal actions (1) when the landlord voluntarily assumes the duty to do so or (2) when the third-party criminal actions are foreseeable." *Harris* involved facts where three armed robbers entered Pizza Hut and injured two patrons and killed another. The supreme court found Pizza Hut assumed a duty it would not otherwise have had when it hired off-duty police officers to provide security for the Pizza Hut premises. When the officer on duty on the evening in question was negligent in the performance of his duties, resulting in the shooting of several patrons by would-be robbers, the supreme court held that Pizza Hut assumed

9

the duty to provide security for its customers and was liable for damages caused by the breach of this assumed duty.

In *Posecai*, the plaintiff sued Wal-Mart Stores, Inc., after being robbed in the parking lot of Sam's Wholesale Club in Kenner, Louisiana. The supreme court in *Posecai* found that, during the prior six years, the parking lot had been the scene of three predatory offenses and that the area surrounding the store was considered "a high crime area." This, however, was not enough for the supreme court to find that defendant had a duty to post security guards in the parking lot.

Initially, we note the principle enunciated in *Harris*, regarding a business owner assuming a duty to provide security, was clarified by the Louisiana Supreme Court in *Posecai*, 752 So.2d at FN7, where the supreme court reasoned:

> We reject the court of appeals' [sic] finding that Sam's assumed a duty to protect its patrons from crime when it hired a security officer to guard its cash office. This finding relies on an erroneous interpretation of our decision in *Harris v. Pizza Hut of Louisiana, Inc.*, 455 So.2d 1364 (La.1984). *Pizza Hut* does not stand for the proposition that a business assumes the duty to protect its customers from the criminal acts of third persons merely because it undertakes some security measures. Rather, *Pizza Hut* was an ordinary negligence case, holding that a security guard employed by a business must exercise reasonable care for the safety of the business' patrons and breaches that duty when his actions cause an escalation in the risk of harm. In *Pizza Hut*, the restaurant's security guard was negligent because he heightened the risk of harm to Pizza Hut's customers by provoking gunfire from armed robbers who had entered the restaurant.

In *Posecai,* the supreme court established a duty on business owners "to implement reasonable measures to protect their patrons from criminal acts when those acts are foreseeable." *Id.* at 766. Clearly, the duty in *Posecai* is intended to protect patrons conducting business on the premises. *Pizza Hut* and *Posecai* do not stand for the proposition that a business assumes the duty to protect its customers from the criminal acts of third persons merely because it undertakes some security

10

measures. And again, the argument that Defendants here assumed a greater duty to protect is even weaker than in *Pizza Hut* and *Posecai,* because the owner of an apartment complex, unlike the owner of a business, does not invite the general public onto its premises.

Plaintiffs also rely on *Potter v. First Fed. Sav. & Loan Ass'n of Scotlandville*, 615 So.2d 318 (La.1993), which is a case that involves a lessor/landlord. In *Potter*, the plaintiff, a tenant, was raped in the poorly lit parking lot of her apartment complex. In that case, the supreme court discussed whether the defendant/landlord assumed a duty of security to the plaintiff/tenant. The plaintiff therein testified, without contradiction, that she had complained about the poor lighting in the parking lot (knowing that others before her had also complained). She was assured that more lights, and more powerful lights, would be placed in the parking lot. In reversing the grant of summary judgment in favor of the lessor/landlord, the supreme court reasoned:

> Potter's deposition indicates she spoke to Coussins [the landlord] once or twice about the lighting being so inadequate that at night she could not differentiate between her automobile and someone else's vehicle. Weeks prior to the attack, Coussins assured her the exterior lights were, "being taken care of. And . . . Kim had arranged to have more powerful lights and more number of lights put out." Since Potter's alleged lease is an oral one, Coussins' assurances could have modified the terms of the contract of lease, ***creating an express or implied contractual duty to maintain adequate lighting in the parking area***.

*Id*. at 326 (emphasis added).

In support of its finding that the lessor/landlord's assurances in *Potter* "create[ed] an express or implied contractual duty," the supreme court cited to this court's opinion in *Thompson v. Cane Garden Apts.*, 442 So.2d 1296 (La.App. 3 Cir.1983). In that case, this court held where the lessor expressly warranted that a

11

security guard was on duty and the lease contract provided lessor would maintain the premises in a decent and safe condition, yet as a result of the breach of the obligation an intruder gained access to plaintiff lessees' apartment, assaulting them, the plaintiff stated causes of action in contract and tort.

Clearly, *Potter* is factually distinguishable from the present case. In *Potter*, the plaintiff was a tenant, not a random visitor to the complex. Moreover, the plaintiff was specifically provided assurances from the landlord about security measures, which the court found was an implied assumption of a duty. However, any duty assumed in *Potter* surely would not be extended to someone who was not a tenant or even an invitee and did not rely on any assurances made. Thus, it does not support Plaintiffs' argument under the particular facts of this case.[1]

Plaintiffs also cite the appellate court opinion in *Campbell v. Orient-Express Hotels Louisiana, Inc.*, 23-731 (La.App. 4 Cir. 4/25/24), ___ So.3d ___. In that case, a guest at the Windsor Court Hotel in New Orleans, was robbed in the hotel's courtyard entrance. Surveillance videos showed a car enter the courtyard. The guest entered the courtyard and initially walked toward the hotel entrance but turned around and walked to the car. A few seconds after he reached the car, the guest pulled a "substantial amount of cash" from his pocket and appeared to show the cash to the car's occupants. He put the cash back into his pocket and leaned towards the

---

[1] We also note the court in *Salafian v. Gabriel*, 13-1399, p. 3 (La.App. 4 Cir. 7/16/14), 146 So.3d 753, 756, addressed the duty of a landlord to a tenant, stating:

> As to the duty owed by a landlord to a tenant, this court has previously held that unless there is some special relationship between the landlord and tenant, or where the landlord has assumed an implied or expressed obligation to the tenant and breached that duty, the landlord/lessor has no duty to protect his tenant from harm sustained as a result of acts of third persons. *Cornelius v. Housing Authority of New Orleans*, 539 So.2d 1250 (La.App. 4 Cir.1989). See also, *Terrell v. Wallace*, 98-2595, (La.App. 1 Cir. 12/28/99), 747 So.2d 748.

12

car, where he appeared to engage in conversation with the occupants. He then retrieved the cash from his pocket again. Within two seconds, the car began to drive away, dragging the guest with it. He filed suit against the Windsor Court, asserting claims of negligence and strict liability. In 2022, the defendants moved for summary judgment, which the district court granted. The district court concluded plaintiff "failed to meet his burden of proving that there was a legal duty to protect him against this specific criminal act." The fourth circuit reversed, finding "there were genuine issues of material fact regarding whether this particular incident was foreseeable, thus, imposing a duty of protection on Windsor Court."

However, between the filing of briefs in this case and oral argument, the Louisiana Supreme Court reversed the appellate court's decision and reinstated the trial court's grant of summary judgment. *Campbell v. Orient-Express Hotels Louisiana, Inc.*, 24-840 (La. 3/21/25), ___ So.3d ___. The supreme court did hold as a matter of law, the Windsor Court owed a duty to take reasonable precautions to protect its guests from the criminal activity of third parties, i.e., to provide a reasonably safe environment free of criminal activity. In so finding, the court noted the *Posecai* court merged the concept of duty and scope of duty into a single consideration in discussing foreseeability. It found the issue of foreseeability in this case was a factor more properly considered in determining whether the risk was within the scope of a duty owed. The court noted that the guest's own actions placed him in grave peril. It found there was no ease of association between the hotel's duty and the risk a guest would voluntarily approach an unknown vehicle and twice display a sizeable amount of money to its occupants, who were unknown to the guest. Plaintiff's own actions, and not any inaction by the hotel, gave rise to the incident. Because the scope-of-duty element was missing, the court did not need to

13

consider the remaining duty-risk elements. Defendants were entitled to summary judgment.

Thus, we find *Campbell*, as decided by the supreme court, is actually supportive of the trial court's grant of summary judgment in this case. Similarly, as in *Campbell,* there is no question that Plaintiff's own criminal actions placed him in grave peril. Thus, it was Plaintiff's actions, and not any inaction by Defendants herein, that gave rise to the incident.

Lastly, as noted, the trial court found the recent supreme court case of *Evans*, 384 So.3d 853, mandated the granting of summary judgment under the facts of this case. In *Evans*, a verbal altercation occurred in the parking lot of a convenience store between two men. It was undisputed that the decedent, Wiley, first struck Daniels in the face. Daniels then shot and killed Wiley. A wrongful death lawsuit was filed, naming as one defendant, Abubaker, the store owner. Abubaker filed a motion for summary judgment seeking dismissal of the action on the grounds it had no duty to protect against the criminal actions of the decedent and other third parties on its premises. The petition alleged a duty was imposed on the store owner to provide heightened security measures on its premises to deter criminal activity. The petition further alleged this duty was breached by the failure to implement appropriate security measures, such as hiring a security guard to patrol its premises. The trial court denied the motion for summary judgment, finding questions of fact remained. The appellate court denied the writ application. The Louisiana Supreme Court granted the writ of certioari and reversed, granting the motion for summary judgment.

In its analysis, the supreme court noted when Wiley entered into an argument with Daniels, he was not acting as a store patron but acting on his own behalf on a

14

personal matter. Furthermore, when Wiley struck Daniels in the face with his hand, he was committing the crime of battery. The *Evans* court concluded as follows:

> Our jurisprudence has exonerated business owners from negligence liability in circumstances when a former business patron intentionally chooses to engage another person in a verbal altercation, which escalates to physical violence and results in personal injury, outside of the business premises (in a parking lot or adjoining public area), on the basis that a business is unable to prevent the voluntary criminal actions of former patrons when they have no specific warning of impending criminal behavior. See **Albritton v. Woods**, 34,073, pp. 9-10 (La.App. 2 Cir. 9/28/01), 795 So.2d 1239, 1244. Further, when a former business patron chooses to escalate his or her verbal altercation with another person outside of the business premises, by engaging in non-consensual physical contact, he or she becomes an aggressor and may be found completely responsible for any injuries incurred, including when the other person responds in self-defense. See e.g. **Seymour v. House of Blues New Orleans Restaurant Corp.**, 20-0297, pp. 10-11 (La.App. 4 Cir. 11/25/20), 309 So.3d 805, 813, writ denied, 20-01441 (La. 2/9/21), 310 So.3d 181; **Broussard v. Gallo**, 12-0239, p. 5 (La.App. 1 Cir. 11/2/12), 2012 WL 5385594 (unpublished); **Landry v. Bellanger**, 02-1443, p. 16 (La. 5/20/03), 851 So.2d 943, 955.

> In the instant case, Mr. Wiley intentionally engaged in non-consensual physical contact against Mr. Daniels when he struck Mr. Daniels in the face, committing the crime of battery, and no evidence was submitted in opposition to Abubaker's motion for summary judgment to suggest that such behavior was imminent and/or foreseeable. Therefore, under the particular facts and circumstances of this case, Abubaker had no duty to protect Mr. Wiley against the consequences of his own intentionally criminal actions.

> Since Abubaker had no duty to this particular person under these circumstances, an essential element (the duty element) of the plaintiff's negligence action was lacking; therefore, Abubaker's motion for summary judgment should have been granted without regard to whether the defendant conformed its conduct to the applicable standard of care.

*Id.* at 859–60.

Plaintiffs attempt to distinguish *Evans* by arguing Plaintiff herein did not initiate the fight, thus, was not involved in any criminal acts on his part as the victim was in *Evans*. This argument ignores the clear evidence of Plaintiff's active

15

involvement in the altercations and the fact he was in possession of a firearm. Plaintiffs also argue that the shooting was "imminent and foreseeable" due to the fact that guns were clearly present as evidenced by the video. This argument fails for two reasons. First, *Evans* noted foreseeability did not need to be addressed until the presence of a duty was established. Second, if Plaintiffs are correct that it was foreseeable that a shooting was imminent when the first gun appeared and/or the first fight occurred, Plaintiff was clearly reckless in not removing himself from the combustible situation.

In *Albritton v. Woods*, 34,073, p. 9 (La. App. 2 Cir. 9/28/01), 795 So.2d 1239, 1244, the court found the defendant/bar owner's duty "did not extend to protecting Albritton from the consequences of his own decision to continue the encounter with Woods after the dispute appeared to be over." Thus, even if a duty was assumed in this case, under *Albritton*, that duty would not extend to Plaintiff here due to his decision to remain in such an obviously dangerous scene.

In this case, the undisputed facts indicate the Defendants did not assume a duty to protect this particular Plaintiff under the facts of this case. There was no relationship between Defendants and Plaintiff (no store/patron relationship or tenant/landlord relationship). *Evans*, 384 So.3d 853, makes it clear that even a person who is normally entitled to protection (i.e., a patron or a tenant) can lose that protection when he engages in reckless conduct. Therefore, as the court found in *Evans*, under the particular facts and circumstances of this case, Defendants herein had no duty to protect Plaintiff against the consequences of his own intentionally criminal actions.

**DECREE**

For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed against Plaintiffs-Appellants.

**AFFIRMED.**